## Norfolk

AMOS LEE CHERRY, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1950-89-1

Decided March 24, 1992

COUNSEL

William P. Robinson, Jr. (Robinson, Zaleski, Lindsey & Associates, on brief), for appellant.

Virginia B. Theisen (Mary Sue Terry, Attorney General; Janet F. Rosser, Assistant Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Amos Lee Cherry entered a conditional guilty plea to possession of cocaine with the intent to distribute. The trial court convicted him of that crime and sentenced him to ten years in the penitentiary and fined him $10,000. Cherry reserved the right to appeal the trial court's denial of his motion to suppress an inculpatory statement in which he admitted that he owned a jacket in which the cocaine was discovered. Cherry contends that the statement should have been suppressed because the police officers failed to give him *Miranda* warnings before interrogating him about who owned the jacket. The trial judge ruled that Cherry was not in custody for purposes of *Miranda* when he was questioned and admitted owning the jacket. Therefore, the trial judge ruled that officers were not required to give Cherry *Miranda* warnings. We affirm the ruling of the trial judge.

On August 8, 1988, Officer Ronald Jernigan received a telephone tip from an informant whom he had known for five years and who had provided Jernigan reliable information on numerous occasions. The informant told Jernigan that a black male named Amos Cherry was headed for the Berkley-Campostello area in Norfolk, driving a light blue Mercedes with license number SLK-

108, and that Cherry had cocaine in the vehicle.

Officer Jernigan and his partner proceeded to the Campostello area, where they spotted a vehicle matching the description being driven by a black male and bearing the license number provided by the informant. The officers stopped the Mercedes and approached the vehicle, where they found Cherry seated at the wheel. Cherry's four-year-old daughter was a passenger in the vehicle. Officer Jernigan asked Cherry for his driver's license and registration. Cherry responded that he did not have them with him. The officer asked Cherry to get out of the car, and Cherry complied.

Officer Jernigan told Cherry that the police were conducting a narcotics investigation. Jernigan asked Cherry if he had any objection to a search of the vehicle. Cherry consented to the officer's searching the vehicle.[1] At this juncture, Cherry was standing outside his vehicle. The officers did not frisk, arrest, or otherwise restrain Cherry.

The officers proceeded to search Cherry's vehicle. Officer Jernigan spotted a white jacket on the back seat. He asked Cherry if the jacket was his. Cherry responded that it was. Officer Jernigan found Cherry's driver's license and two bags of cocaine in the white jacket. At that point, Cherry was arrested and placed in the police vehicle. The officers continued their search of Cherry's vehicle. They found a digital beeper in the glove compartment and an "L.A. Lakers" bag containing five plastic bags of cocaine and $2800 in cash in the trunk of the Mercedes.

The Commonwealth, relying on *Berkemer v. McCarty*, 468 U.S. 420 (1984), contends that Jernigan was not required to advise Cherry of his *Miranda* rights because Cherry was being detained incidental to a routine traffic stop. Because Officer Jernigan informed Cherry that he was being stopped as part of a narcotics investigation, we reject the Commonwealth's contention that this was a "routine traffic stop."

▮ A routine, roadside traffic stop and the usual questioning associated with such a brief stop generally will not be considered "custodial interrogation" because the detention is usually of very

---

[1] Cherry challenged the trial court's finding that he consented to the search, but that issue is not before us on appeal.

short duration and the attendant circumstances "are not such that the motorist feels completely at the mercy of police." Such stops are usually in public and only one or perhaps two officers are usually present. *Id.* at 437-38. Consequently, *Miranda* warnings are not required prior to the type questioning usually associated with such stops.

■ *Berkemer* did not establish a *per se* rule that *Miranda* warnings are never required during the period of a roadside traffic stop. Instead, *Berkemer* held that the circumstances normally attendant to a routine, roadside traffic stop are such that a reasonable person subject to such a stop would not believe that his or her freedom of action has been restrained in any significant way. *See id.* at 436-37. A motorist subjected to a routine, roadside traffic stop expects a temporary detention, brief questioning pertaining to licensing and registration, perhaps a citation, and being released to proceed on his or her way. *Id.* at 437. Thus a *routine*, roadside traffic stop is noncustodial and no *Miranda* warnings are required.

■ Cherry was not detained in a routine traffic stop. Officer Jernigan informed Cherry that he was being detained to investigate illegal drug activity. A reasonable person in Cherry's circumstances would not expect only a brief detention to check license and registration, questioning incidental to license and registration, and the issuance of a citation, after which he would be released to go his way. While "it is not the seriousness of the offense being investigated that determines whether a suspect should be afforded the *Miranda* rights," *May v. Commonwealth*, 3 Va. App. 348, 354, 349 S.E.2d 428, 431 (1986), the fact that the suspect knows or has been apprised of the nature of the investigation is one factor which bears upon whether he or she is in custody for *Miranda* purposes. A suspect "subjected to custodial interrogation" is entitled to be advised of his constitutional rights under *Miranda* "regardless of the nature or severity of the offense of which he is suspected." *Berkemer*, 468 U.S. at 434. Accordingly, we reject the argument that under the principles of the *Berkemer* decision, the detention of Cherry was a routine, roadside traffic stop and, for that reason, was noncustodial.

We turn to whether Officer Jernigan's question about who owned the jacket, without first giving Cherry *Miranda* warnings, violated Cherry's fifth amendment privilege against self-incrimination. We find that, under the circumstances, Cherry was not

subjected to a custodial interrogation, *Miranda* warnings were not required, and Cherry's fifth amendment rights were not violated.

■■■ *Miranda* warnings are required whenever a suspect is subjected to "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Every detention does not necessarily constitute custodial interrogation for purposes of *Miranda*. A person is in custody for *Miranda* purposes only when the person's "freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer*, 468 U.S. at 440 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)). If an officer has a reasonable, articulable basis to suspect that an individual has committed or is about to commit a crime, the officer is justified in briefly detaining the suspect and asking him a limited number of questions without giving *Miranda* warnings in order to quell or confirm the officer's suspicion of criminal activity. *Berkemer*, 468 U.S. at 439 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The brief detention and nature of the questioning in such situations is dramatically different from the coercive influences in "police dominated, station house interrogations" which are frequently prolonged and against which *Miranda* was designed to protect. *Id*. at 438-39. *Miranda's* prophylactic rule recognizes that a person questioned in a custodial situation is subjected to compelling influences which might induce him "to speak where he would not otherwise do so freely." 384 U.S. at 467. Whether a suspect is "in custody" turns upon "how a reasonable man in the suspect's position would have understood his situation." *Berkemer*, 468 U.S. at 442. Thus, a suspect is "in custody" when the objective circumstances would lead a reasonable person to believe he was under arrest, thereby subjecting him or her to pressure impairing the free exercise of the privilege against self-incrimination. The circumstances may include factors such as the familiarity or neutrality of the surroundings, the number of officers present, the degree of physical restraint, the duration and character of the interrogation, the presence of probable cause to arrest, and whether the suspect has become the focus of the investigation. *Wass v. Commonwealth*, 5 Va. App. 27, 33, 359 S.E.2d 836, 839 (1987).

■■ Consequently, we must consider all of the circumstances of Cherry's detention as viewed from the perspective of a reasonable person, *Berkemer*, 468 U.S. at 442; *Wass*, 5 Va. App. at 32, 359 S.E.2d at 839, in deciding " 'whether there is a formal arrest or

restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)).

When the law enforcement officers signalled for Cherry to stop by activating their blue lights and siren, they had a reasonable and articulable suspicion that he was engaged in illegal narcotic activity based on the information provided by their reliable informant. Thus, they had legal justification for stopping him. Cherry was required by statute to stop his vehicle when the officers signalled for him to do so; for him to have disregarded the signal or to have attempted to elude the officers would have constituted a criminal offense. *See* Code § 46.2-817. *But see Berkemer*, 468 U.S. at 436 (any traffic stop entails some restraint on the driver's freedom of action as a result of state statutes making it a crime to disregard an officer's signal to stop or, once having stopped, to drive away without permission). Cherry was informed by Officer Jernigan that he had been stopped as part of a narcotics investigation. A person in Cherry's situation would no longer have regarded the detention as a routine traffic stop. Nevertheless, when the officer asked Cherry who owned the jacket, Cherry had not been placed under formal arrest or restrained in any significant way. He had been asked to step outside his vehicle in public view, with two officers present. He had not been handcuffed or physically restrained. Moreover, when the officer asked if he could search the vehicle and who owned the jacket, Cherry had been detained only a short time. Additionally, Cherry had been permitted to take his young daughter aside to comfort her. Based upon these circumstances, we uphold the trial court's conclusion that a reasonable person in Cherry's position would not have reasonably believed he was under arrest; consequently, Cherry's freedom of action was not restrained in any significant way and not to the degree required by *Miranda*. The officers had a reasonable and articulable suspicion that Cherry was engaged in illegal narcotic activity and, thus, were entitled to ask him a limited number of questions to confirm or dispel their suspicion. Because Cherry was not subjected to custodial interrogation, *Miranda* warnings were not required prior to such questioning.

Accordingly, we hold that the trial court did not err in finding

that Cherry was not "in custody" and, thus, *Miranda* warnings were not required. We affirm the conviction.

*Affirmed.*

Baker, J., and Willis, J., concurred.