COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Annunziata, and Overton
Argued at Richmond, Virginia


NEAL NATHANIEL CARROLL
                                        MEMORANDUM OPINION[*] BY
v.          Record No. 2353-95-2         JUDGE NELSON T. OVERTON
                                          FEBRUARY 25, 1997
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                       Robert W. Duling, Judge

           Robert N. Johnson (Anne M. Johnson; Derek E.
           Leake; Robert N. and Anne M. Johnson, Inc.,
           on briefs), for appellant.

           Eugene Murphy, Assistant Attorney General
           (James S. Gilmore, III, Attorney General, on
           brief), for appellee.


     Neal Nathaniel Carroll appeals his conviction for possession

of cocaine with the intent to distribute in violation of Code

§ 18.2-248.  He contends that the trial court erroneously

admitted (1) the cocaine found in his jacket and (2) statements

he made during the search.  We affirm the decision of the lower

court as to the first issue, but reverse as to the second and

remand for a new trial.

     On January 31, 1995, the Drug and Firearm Strike Force of

the Richmond Police Department executed a search warrant for

cocaine and related items at the residence of Cecil James.  The

defendant, Carroll, did not reside there but was present on that

_____

     [*]Pursuant to Code § 17-116.010 this opinion is not

designated for publication.

day.  After a forced entry into the rear door, the police secured the apartment, which included handcuffing Carroll on the floor.

A leather jacket was on a chair near Carroll.  One police officer asked Carroll if it was his; Carroll answered that it was not.  The officer searched the pockets, finding store receipts and a bag of cocaine.  The officer asked Carroll if the jacket contained anything with Carroll's name on it.  Carroll replied affirmatively, and the officer read Carroll his <u>Miranda</u> rights. He again asked Carroll if the jacket was his, and this time Carroll admitted that it was.

> At trial, the prosecutor argued in his closing statement:
> But, if you have sixty-six grams of cocaine in that coat, your first reaction when someone says, hey, is this your coat?  No, that is not my coat.  Especially if it is an officer, a police officer.  First thing, no, that is not my coat.  That is why when the officer said, "Is it your coat?" He said, "No, it is not my coat."  Why would he say that?  There is no reason except for the fact that he knew there was sixty-six grams of cocaine in the pocket, stuffed in the pocket.  That is the only reason.

Carroll contends on appeal, as he did before and during the trial, that the physical evidence of the cocaine should have been suppressed, as should the statements he made before he was read his <u>Miranda</u> rights.

The cocaine itself was admissible.  The police were searching the apartment for narcotics pursuant to a valid search warrant.  They would have searched the jacket because it was clearly a place where narcotics may have been hidden.  Even if

the unlawful questioning of Carroll in fact led to the search of the jacket, evidence tainted by an unlawful seizure is admissible when the Commonwealth shows "'(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternative line of investigation.'" Walls v. Commonwealth, 2 Va. App. 639, 656, 347 S.E.2d 175, 185 (1986) (quoting United Stated v. Cherry, 759 F.2d 1196, 1204 (5th Cir. 1985)). Consequently, the evidence shows that the cocaine would have been discovered by other lawful means, and is not the fruit of Carroll's statements.

The statements, however, were made by Carroll in response to police questions before he was read his rights and are not admissible. Carroll was in custody at the time that he was questioned. He was surrounded by several armed police officers who had forced their way into the apartment; he was ordered to lie down; he was handcuffed; and then he was questioned. A police officer testified that he would not have let Carroll leave if he had asked and admitted that Carroll was suspected of drug activity. See Wass v. Commonwealth, 5 Va. App. 27, 359 S.E.2d 836 (1987). "A reasonable man confronted with [an] armed display of manpower at his house, even though earlier told he was not under arrest and was free to leave, could only conclude that he

was in fact not free to leave and was expected to cooperate. The atmosphere was exactly the type of police dominated environment described in Miranda." Id. at 34, 359 S.E.2d at 840.

Carroll then was directly questioned by a police officer, which constituted an interrogation or its functional equivalent. The police officer's questions were obviously designed to elicit incriminating responses from Carroll and were therefore the functional equivalent of an interrogation. See Blaine v. Commonwealth, 7 Va. App. 10, 15, 371 S.E.2d 838, 841 (1988).

The admission of Carroll's statements at trial was not harmless error. The Commonwealth stressed that Carroll had initially denied ownership of the jacket and then admitted it when the officer found receipts bearing his name. The Commonwealth suggested to the jury that, because he denied ownership, Carroll must have known that the cocaine was in the jacket.

The Commonwealth was required to prove that Carroll intentionally and consciously possessed the cocaine. Without the denial of ownership, the Commonwealth could not have implied that Carroll consciously possessed it with knowledge of its nature and character. Admission of Carroll's statements was therefore reversible error.

We affirm the denial of the suppression of the cocaine. We reverse the denial of the suppression of Carroll's statements

made before the <u>Miranda</u> rights and remand the cause for a new trial not inconsistent with our ruling.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>

Annunziata, J., concurring.

I concur in the opinion of the majority. I write separately to address the Commonwealth's contention that Carroll's detention was not the functional equivalent of an arrest because it was authorized as incident to the execution of a lawful search warrant, under the holding in Michigan v. Summers, 452 U.S. 705 (1981). Under the facts of this case, there is no dispute that Carroll's detention was lawful under the Fourth Amendment: "for Fourth Amendment purposes . . . a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id. at 705. Such detentions are typically analogous to limited, Terry-type intrusions, id. at 699-703, "[a]lthough special circumstances, or possibly a prolonged detention, might lead to a different conclusion in an unusual case." Id. at 705 n.21.

In the comparatively nonthreatening, noncoercive environment of a typical Terry-type detention, a reasonable person would not believe that his or her freedom of action had been restrained in any significant way so as to invoke Miranda. Berkemer v. McCarty, 468 U.S. 420, 436-37 (1984); United States v. Burns, 37 F.3d 276, 281 (7th Cir. 1994). Contrary to the Commonwealth's contention, however, it does not necessarily follow that because the type of detention at issue is analogous to a Terry-type stop, the detainee is not entitled to Miranda's protections. See,

e.g., Cherry v. Commonwealth, 14 Va. App. 135, 139, 415 S.E.2d 242, 244 (1992).  Instead, the issue is whether "the objective circumstances would lead a reasonable person to believe he was under arrest, thereby subjecting him or her to pressure impairing the free exercise of the privilege against self-incrimination." Id. at 140, 415 S.E.2d at 245.  The reviewing court must decide "`whether there is a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."  Id. at 140-41, 415 S.E.2d at 245 (citations omitted).

The circumstances of the present case were far more intrusive and threatening than those characterizing a typical Terry-type stop.  That both the detention and the questioning of appellant were of short duration and were out of public view, is not sufficient to dispel the "custodial" environment in which the interrogation was conducted in this case.  See Wass, 5 Va. App. at 34, 359 S.E.2d at 840.