BENTON, Judge,
dissenting.
I would hold that the scope of the detention exceeded a Terry stop and that the ensuing questioning constituted custodial interrogation for Miranda purposes. A reasonable person, who was detained in the manner James E. Harris, Jr., was detained, would have believed he or she was “in custody” prior to the time the officers questioned Harris about the corn cob pipe found in his pocket.
“[S]topping an automobile and detaining its occupants constitutes a ‘seizure’ within the meaning of [the Fourth Amendment] even though the purpose of the stop is limited and the resulting detention quite brief.” Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). A person “who has been detained pursuant to a traffic stop [and is] thereafter ... subjected to treatment that renders him ‘in custody' for practical purposes, [is] entitled to the full panoply *570 of protections prescribed by Miranda.” Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). The seizure becomes custodial for purposes of Miranda whenever the person has his or her “freedom of action ... curtailed to a ‘degree associated with formal arrest.’ ” Id. (citation omitted).
Furthermore, whether a person is “in custody” within the meaning of Miranda turns upon “how a reasonable [person] in the suspect’s position would have understood his situation.” Id. at 442, 104 S.Ct. at 3151. “Thus, a suspect is ‘in custody’ when the objective circumstances would lead a reasonable person to believe he was under arrest, thereby subjecting him or her to pressure impairing the free exercise of the privilege against self-incrimination.” Cherry v. Commonwealth, 14 Va.App. 135, 140, 415 S.E.2d 242, 245 (1992). “[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.” Stansbury v. California, 511 U.S. 318, 323, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994).
Among the factors that must be considered are whether a suspect is questioned in familiar or neutral surroundings, the number of police officers present, the degree of physical restraint, and the duration and character of the interrogation. Whether or when probable cause to arrest exists and when the suspect becomes the focus of the investigation are relevant facts to consider. “[T]he language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual” may be significant factors as well.
Wass v. Commonwealth, 5 Va.App. 27, 32-33, 359 S.E.2d 836, 839 (1987) (citations omitted).
The traffic stop occurred at 11:00 a.m. on a heavily travelled interstate highway. When the driver stopped the automobile, Trooper Jones exited his vehicle and yelled, “Let me see your *571 hands.” Harris opened the passenger side door, leaned down and bent forward. According to Trooper Jones, Harris appeared to be reaching under the seat, reaching outside the automobile, or reaching to drop something at the side of the automobile. Later, Trooper Jones found a paper cup of beer on the ground next to the passenger side door. Harris admitted the beer was his.
Because Trooper Jones could not see Harris’ hands, Trooper Jones drew his weapon. He pointed it in Harris’ direction and repeatedly yelled, “let me see your hands.” The evidence proved that the noise from the highway made hearing difficult. Harris then exited the automobile and took “maybe one or two steps” toward Trooper Jones. Trooper Jones testified that Harris was “not [acting] in a threatening manner, by any means. He just seemed very agitated in what was happening.” The driver complied with Trooper Jones’ order by sticking his hands out the driver’s side window.
Trooper Luddy arrived and approached the automobile. As Trooper Luddy approached, Trooper Jones holstered his weapon. Trooper Luddy testified that he placed his hand on Harris’ arm or shoulder and escorted Harris to the front of the automobile. However, Trooper Jones said Trooper Luddy “actually took Mr. Harris from behind and pushed him toward the [automobile].” Both agreed that Harris offered no physical resistance.
Trooper Luddy told Harris to place his hands on the hood of the automobile. When Harris placed his hands on the hood of the automobile, Trooper Luddy “had a foot probably on the inside of [Harris’] foot touching his shoe and a hand, either on [Harris’] shoulder or on his back.” Harris repeatedly removed his hands from the hood and complained to Trooper Luddy that the hood of the automobile was “hot.” Although the testimony established that the stop occurred on a bright sunny day in June after the automobile had been travelling on the interstate highway, Trooper Luddy ordered Harris to keep his hands on the hot hood.
*572 Trooper Watts then arrived and approached Trooper Lnddy and Harris. When Trooper Watts arrived, Harris was leaning against the automobile with his hands on the hood. Trooper Watts testified that Trooper Luddy was repeatedly telling Harris to stand still, keep his hands on the automobile, and not to move. Trooper Watts said he told Harris the same things because Harris seemed excited and argumentative. Trooper Watts also was unresponsive to Harris’ complaint that the hood of the automobile was hot. Watts did not know Trooper Jones had aimed his weapon at Harris. Trooper Watts testified that Harris was not free to turn around or to leave.
The totality of the objective circumstances in this case would lead a reasonable person in Harris’ position to believe he or she was under arrest. See Cherry, 14 Va.App. at 139, 415 S.E.2d at 245. Harris was “subjected to restraints comparable to those associated with a formal arrest.” Berkemer, 468 U.S. at 441, 104 S.Ct. at 3151. The seizure involved three police officers. The first officer drew his weapon on Harris. The second officer physically grabbed Harris, forced him to lean with his hands on the heated hood of the automobile, and restrained Harris in that position by his commands and force. The third officer also participated in this restraint, repeating the instructions that Harris was to stand still and remain facing the automobile with his hands on the hood. Moreover, the stop in this case was not of a short duration but lasted approximately twenty minutes. See Berkemer, 468 U.S. at 441 n. 34, 104 S.Ct. at 3151 n. 34 (citing Commonwealth v. Meyer, 488 Pa. 297, 412 A.2d 517, 518-19, 522 (1980) (driver who was detained for over one-half hour was in custody for the purposes of Miranda by the time the driver was questioned concerning the circumstances of an accident)). A reasonable person in Harris’ position would clearly feel that he or she was unable to leave and that he or she was, in fact, “in custody.” This detention was the “functional equivalent of formal arrest,” Berkemer, 468 U.S. at 442, 104 S.Ct. at 3151, and created a custodial situation requiring appropriate Miranda warnings.
*573 Trooper Watts testified that he asked Trooper Luddy if he had conducted a pat-down search of Harris. Trooper Luddy said that when he asked Harris if he would consent to a pat-down search of his clothing for weapons, Harris consented. Trooper Luddy testified that he felt a pipe-like device in one of Harris’ front pants pockets. Trooper Watts also felt the pipe and told Harris to remove the pipe from his pocket. When Harris removed the pipe, it was “a corn cob pipe.” Although Trooper Luddy testified that the pipe was one that he usually associated with marijuana, he did not detect an odor of cocaine or marijuana when he smelled the pipe. Indeed, the laboratory analysis reported no cocaine in the pipe. However, Trooper Watts told Trooper Luddy the pipe was a crack pipe.
When Trooper Watts asked Harris if he had used the pipe to smoke crack, Harris responded that he did not use crack cocaine. Trooper Watts then asked Harris where his tobacco was located. Harris responded that the tobacco was in the automobile and asked Trooper Watts if he wanted to see the tobacco. Harris went to the passenger side of the automobile and removed a small tobacco pouch and opened it. According to Trooper Watts, a small clear vial with a green top was clearly visible on top of the tobacco. Trooper Watts testified that Harris picked up a chunk of tobacco and twisted it so that the vial fell to the bottom of the pouch. When Trooper Watts asked to see the pouch, Harris handed it to him. Trooper Watts removed the vial, saw chunks of matter that appeared to be cocaine inside the vial, and arrested Harris. Only then did the troopers inform Harris of his Miranda rights.
A person in the custody of police “must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney.” Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Statements made by an accused during custodial interrogation and without proper Miranda warnings are inadmissible as evidence. See Dean v. Commonwealth, 209 Va. 666, 667-68, 166 S.E.2d 228, 230 (1969). “[C]ustodial interrogation ... [is] *574 questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Miranda, 384 U.S. at 444, 86 S.Ct. at 1612 (footnote omitted).
This is not a case where, during a routine traffic stop, “a single police officer asked [the defendant] a modest number of questions,” Berkemer, 468 U.S. at 442, 104 S.Ct. at 3151, or where the defendant’s “freedom of action was not restrained in any significant way.” Cherry, 14 Va.App. at 141, 415 S.E.2d at 245. This is also not a case where there was “no indication that [the officer] employed any physical force or engaged in any outward displays of authority that indicated that [the officer] was detaining [the defendant].” United States v. Sullivan, 138 F.3d 126, 132 (4th Cir.1998) (no custodial interrogation where officer questioned defendant, who was seated in his own automobile throughout the dialogue, after a lawful traffic stop had ended). Harris was subject to “custodial interrogation” at the time the troopers questioned Harris about the pipe Harris possessed. See Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (holding that “the term ‘interrogation’ under Miranda refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.”). The circumstances clearly established that Harris reasonably did not feel free to decline the officer’s questioning and request. Furthermore, the circumstances certainly proved that Harris was not free to terminate the encounter.
Because Harris was not warned of his Miranda rights prior to the questioning that led to the discovery of incriminating evidence, I would hold that the statements were obtained in violation of Harris’ Fifth Amendment rights and that all the evidence derived from his statements was tainted under the rule of Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417-18, 9 L.Ed.2d 441 (1963). The statements and evidence should have been suppressed.
*575 I would also hold that the trial judge’s decision to admit in evidence the driver’s statement was a denial of Harris’ Sixth Amendment right to confront witnesses against him. See Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). The Commonwealth called the driver as its witness at trial. The driver denied any knowledge of the cocaine and denied seeing Harris purchase or possess the cocaine. When the Commonwealth made an oral motion “to strike the entirety of [the driver’s] testimony,” the trial judge granted the motion. After the driver left the courtroom, the Commonwealth proved through Trooper Jones a hearsay statement attributed to the driver.
I believe the statement was inadmissible and that the error was not harmless beyond a reasonable doubt. See Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991). For this additional reason, I would reverse the conviction.