BENTON, Judge,
dissenting.
A person “who has been detained ... [by the police and is] thereafter ... subjected to treatment that renders him ‘in custody* for practical purposes, [is] entitled to the full panoply of protections prescribed by Miranda.” Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The detention becomes “custodial” for purposes of Miranda whenever the person has his or her “freedom of action ... curtailed to a ‘degree associated with formal arrest.’” Id. (citation omitted).
Furthermore, whether a person is “in custody” within the meaning of Miranda turns upon “how a reasonable [person] in the suspect’s position would have understood his situation.” Id. at 442, 86 S.Ct. 1602. “Thus, a suspect is ‘in custody* when the objective circumstances would lead a reasonable person to believe he was under arrest, thereby subjecting him or her to pressure impairing the free exercise of the privilege against self-incrimination.” Cherry v. Commonwealth, 14 Va.App. 135, 140, 415 S.E.2d 242, 245 (1992). “[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.” Stansbury v. California, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).
Among the factors that must be considered are whether a suspect is questioned in familiar or neutral surroundings, the number of police officers present, the degree of physical restraint, and the duration and character of the interrogation. Whether or when probable cause to arrest exists and when the suspect becomes the focus of the investigation are relevant facts to consider. “[T]he language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical sur *262 roundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual” may be significant factors as well.
Wass v. Commonwealth, 5 Va.App. 27, 32-33, 359 S.E.2d 836, 839 (1987) (citations omitted).
When Angelo Ford left the shopping mall, he was stopped on the street by four police officers, three of whom were in uniform and armed with weapons. The officers arrived in four separate police vehicles with their blue emergency lights activated to effect the stop. The officer who detained and questioned Ford testified that Ford was not free to leave. Furthermore, the circumstances certainly proved that Ford was not free to terminate the encounter.
When the police initially stopped Ford, they did so based upon an officer’s specific identification of Ford as the person who went into the wooded area behind the shopping mall and hid a bag containing items with intact store tags. Thus, when the officers detained Ford, the investigation had not only focused on Ford but had particularly identified the Lane Bryant clothing store as the place from which the items originated.
During the detention, Ford was questioned about his identity. After the officers questioned Ford about his identity, the officers then repeatedly questioned Ford for an “explanation [of] the activity that [the officer] witnessed ... inside the [mall’s] parking lot.” Ford was questioned about those events for thirty minutes. In addition to the extensive questioning, the police detained Ford to allow two store workers to be brought separately from Lane Bryant to view Ford.
Based on the length of the detention, the number of police officers involved, the nature and repetition of the questions being asked, and the fact that the investigation had focused on Ford, I would hold that the circumstances of the detention and questioning constituted a custodial interrogation. The questioning of Ford was initiated before he was viewed by the store employees. Furthermore, the questioning was designed at the outset to produce incriminating statements from the *263 precise person whom the officer had seen engaging in conduct that the officer believed was criminal. Only after Ford made statements in response to repeated questioning did the officers inform Ford of his Miranda rights.
The totality of the objective circumstances in this case would lead a reasonable person in Ford’s position to believe he or she was under arrest. See Cherry, 14 Va.App. at 139, 415 S.E.2d at 245. The detention was not of a short duration but lasted thirty minutes. A reasonable person in Ford’s position would clearly have felt he or she was unable to leave and that he or she was, in fact, “in custody.” The only reasonable assumption to draw from this record is that if Ford had attempted to leave, he would have been formally arrested. This detention was the “functional equivalent of formal arrest,” Berkemer, 468 U.S. at 442, 104 S.Ct. 3138, and created a custodial situation requiring appropriate Miranda warnings.
A person in police custody “must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney.” Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Statements made by an accused during custodial interrogation and without proper Miranda warnings are inadmissible as evidence. See Dean v. Commonwealth, 209 Va. 666, 667-68, 166 S.E.2d 228, 230 (1969).
Because Ford was not warned of his Miranda rights prior to the questioning that led to his incriminating statements, I would hold that the statements were obtained in violation of Ford’s Fifth Amendment rights and that all the evidence derived from his statements was tainted under the rule of Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because the statements and evidence should have been suppressed, I dissent.