COURT OF APPEALS OF VIRGINIA


Present:  Judges Beales, Powell and Senior Judge Clements
Argued at Richmond, Virginia


MONTE LESHON WHITE

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 2292-07-2                  JUDGE RANDOLPH A. BEALES
                                                                MARCH 4, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            James E. Kulp, Judge Designate[1]

                Jessica M. Bulos, Assistant Appellate Defender (Office of the Public
                Defender; Office of the Appellate Defender, on briefs), for appellant.

                Robert H. Anderson, III, Senior Assistant Attorney General
                (Robert F. McDonnell, Attorney General, on brief), for appellee.


        A jury convicted Monte Leshon White (appellant) of possession of a firearm by a

convicted felon, pursuant to Code § 18.2-308.2.  On appeal, he argues that the trial court erred

both 1) in finding that the police had probable cause to seize the firearm and reasonable

suspicion to detain appellant and 2) in finding that the police did not violate his Fifth

Amendment rights as provided under Miranda v. Arizona, 384 U.S. 436 (1966).  We find the

police had probable cause to seize the firearm and reasonable suspicion to detain appellant.

However, we also find that the police violated appellant's rights in this particular factual

situation when they asked him questions while they were handcuffing him without first

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Judge Clarence N. Jenkins, Jr. ruled on the motion to suppress that forms the basis of
appellant's appeal.  However, Judge Kulp presided over the jury trial, and Judge Jenkins signed the
final order in this case "for James E. Kulp, Judge Designate."  Thus, Judge Kulp technically entered
the final order from which appellant appeals.

informing him of his <u>Miranda</u> rights.  Therefore, given the requirements in <u>Miranda</u>, we hold the trial court erred when it denied his motion to suppress his statements regarding the firearm, and we reverse and remand his conviction for a new trial if the Commonwealth be so inclined.

BACKGROUND

On the evening of July 21, 2006, Officer Howe and Trooper Flaherty were patrolling in the Gilpin Court area of Richmond, when they saw appellant sitting alone in the driver's seat of a parked white Cadillac.  They circled the block and then parked behind the Cadillac, just as appellant was getting out of that car.  The officers met appellant on the sidewalk and asked if he would talk to them.

Appellant began talking to Officer Howe while Trooper Flaherty used a flashlight and examined the interior of the Cadillac.  Then, while Trooper Flaherty talked to appellant at the rear of the Cadillac, Officer Howe looked into the car with his flashlight.  After looking through the front windows several times, Officer Howe determined that he saw the "butt-end of a weapon underneath the armrest of the center console" of the Cadillac.  The armrest was folded down, covering the weapon so that "the butt of the magazine . . . was flush with the vertical edge of the armrest."

Officer Howe then told Trooper Flaherty, from across the car, to put appellant in handcuffs.  When the trooper asked why, Officer Howe reached into the car, took out the gun, put it on the roof of the car, and said, "for this."  Trooper Flaherty began handcuffing appellant, and at the same time Officer Howe asked appellant if the gun belonged to him.[2]  Appellant said, "no, it doesn't belong to me, but I pushed it underneath there when I seen you coming."

---

[2] Trooper Flaherty did not remember that Officer Howe asked this question, nor did he remember appellant's response.  However, the trial court implicitly found that Officer Howe asked the question and that appellant responded.  Neither party argues on appeal that appellant did not make this statement in response to Officer Howe's question.

- 2 -

According to Officer Howe, appellant "knew why he was being detained." After he was handcuffed, the officer explained to appellant that, if "nothing c[a]me back" from a weapons check, then appellant would be released on a summons.[3]

During pretrial hearings, appellant argued that the firearm was not concealed and that, therefore, the officers did not have probable cause to seize it from the Cadillac. He also argued that the officers did not have probable cause to arrest him when they handcuffed him. Alternatively, he argued that, even if he was legally detained, the police began questioning him without informing him of his Miranda rights, so his statements to the police should be suppressed. The Commonwealth argued that "the statement made . . . almost simultaneously with [the trooper] putting [appellant] in handcuffs was not the product of unconstitutional question[ing]."

The trial court found that appellant was detained "at the point they put the cuffs on him." The court then made other findings and, as a result, suppressed items recovered after the handcuffing, but the court did not suppress the firearm, which was recovered prior to the handcuffing. The court also found the officers should have Mirandized appellant after he was handcuffed, so the court suppressed most of appellant's statements to the officers. However, the trial court explained, "With respect to that statement that was made simultaneously, the Court is going to go back to it's [sic] original ruling. I'm not going to deal with that statement today. I think that was simultaneous. I think that comes in." Therefore, the firearm and statement that appellant made while being handcuffed (that the firearm was not his, but he did hide it when he saw the officers) were admitted during the jury trial.

---

[3] The interaction between the police and appellant continued. However, those additional facts are not relevant to the issues before us in this appeal.

ANALYSIS

On appeal, when reviewing the denial of a motion to suppress, this Court examines the evidence presented at the trial level in the light most favorable to the Commonwealth and defers to the factual findings of the trial court. Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999). "However, we review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." Id.; see also Medley v. Commonwealth, 44 Va. App. 19, 34, 602 S.E.2d 411, 418 (2004) (*en banc*) ("[O]ur standard of review requires us to conduct a *de novo* review of the application of the protections afforded by Miranda to the historical facts as found by the trial court."). An appellant has the burden to show that a trial court erred in denying his motion to suppress. Hayes, 29 Va. App. at 652, 514 S.E.2d at 359.

I. Seizure of the Firearm and Detention of Appellant

Appellant contends that the firearm was not hidden in the Cadillac and that it was not "about his person," therefore, the trial court erred in finding the officer had probable cause to seize the gun as evidence of a crime. He also argues that the officers did not have reasonable suspicion to believe that he was committing a crime and, thus, to detain him, so the trial court should have suppressed his statement. We find the officers had probable cause to seize the firearm and reasonable suspicion to detain appellant, as the evidence would allow a reasonable person to believe appellant had committed a crime and that the firearm was evidence of that crime.

Appellant is correct that, when Officer Howe seized the firearm from underneath the center armrest of the Cadillac, he did not know that appellant was a convicted felon. Therefore, he did not have probable cause or reasonable suspicion to believe appellant was violating Code § 18.2-308.2. However, the criminal code in Virginia includes more than one offense involving

a firearm.  For example, Code § 18.2-308(A) criminalizes the carrying of a firearm "about [one's] person, hidden from common observation."  We find Officer Howe did have probable cause to believe appellant was violating this code section once the officer saw the weapon hidden under the armrest.  As reasonable suspicion is a less stringent standard than probable cause, see Alabama v. White, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause . . . ."), our finding that the officers had probable cause to believe the firearm was evidence that appellant was committing a crime necessarily subsumes and includes a finding that the officers also had reasonable suspicion to detain appellant once they saw the firearm.  Thus, the police legitimately seized both the firearm and appellant.

Appellant argues that the firearm was not hidden and, therefore, that the police did not have probable cause to seize the gun or reasonable suspicion to detain him.  However, the evidence, viewed in the light most favorable to the Commonwealth, as we must view the evidence given the Commonwealth prevailed in the trial court, Hayes, 29 Va. App. at 652, 514 S.E.2d at 359, proved that Trooper Flaherty did not see the firearm, although he looked into the interior of the Cadillac using his flashlight.  Officer Howe then looked into the car with his flashlight.  He determined that the item under the armrest was a firearm only after looking at the item several times.  He was only able to observe the butt end of the firearm.  The rest of the gun was hidden under the armrest.

We find the firearm here was sufficiently hidden to give the officers *probable cause* to believe the object was evidence that appellant had committed the crime of concealing a weapon.  Appellant cites several cases that he contends are controlling here, but most of these cases discuss *guilt* beyond a reasonable doubt, not *probable cause*.  See Main v. Commonwealth, 20 Va. App. 370, 371, 457 S.E.2d 400, 401 (1995) (*en banc*); Winston v. Commonwealth, 26 Va. App. 746, 756, 497 S.E.2d 141, 146-47 (1998).  One case cited by appellant that does

- 5 -

discuss probable cause is <u>Slayton v. Commonwealth</u>, 41 Va. App. 101, 582 S.E.2d 448 (2003).

This Court explained in that case:

> In other words, even though probable cause means more than a "mere suspicion," it is not necessary for the facts to be "sufficient to convict" the accused of the offense. <u>Gomez [v. Atkins]</u>, 296 F.3d [253,] 262 [(4th Cir. 2002)] (quoting <u>Taylor v. Waters</u>, 81 F.3d 429, 434 (4th Cir. 1996)). Unlike a factfinder at trial, "reasonable law officers need not 'resolve every doubt about a suspect's guilt before probable cause is established.'" <u>Id.</u> (quoting <u>Torchinsky v. Siwinski</u>, 942 F.2d 257, 260 (4th Cir. 1991)). We reject, therefore, Slayton's assertion that the alleged insufficiency of the evidence for a conviction necessarily precludes a finding of probable cause.
>
> Because Deputy Spencer had probable cause to believe Slayton illegally possessed a concealed weapon, Spencer had authority both to arrest Slayton and to search him incident to that arrest.

41 Va. App. at 107-08, 582 S.E.2d at 451.

In <u>Slayton</u>, a couple of inches of the butt end of the gun were visible to the officer. <u>Id.</u> at 104, 582 S.E.2d at 449. Here, even less of the gun was visible. Officer Howe could only see the "butt end" because the armrest covered all other parts of the firearm. Therefore, comparing the facts in <u>Slayton</u> to the circumstances in this case, Officer Howe clearly had probable cause to believe he was observing a concealed weapon.

Appellant also argues that the firearm was not "about his person," an element of the concealed weapon statute, Code § 18.2-308(A), and, therefore, that the officers did not have probable cause to believe he was violating this statute. Specifically, he contends that, because he had exited the Cadillac and the weapon remained in the car, the gun was not near him or actually in his possession by the time Officer Howe discovered it, confiscated the weapon, and arrested appellant. However, again, the case upon which appellant relies, <u>Pruitt v. Commonwealth</u>, 274 Va. 382, 384, 650 S.E.2d 684, 684 (2007), addresses sufficiency of the evidence to prove guilt, not to establish probable cause. In <u>Pruitt</u>, the Court considered whether the evidence proved

guilt *beyond a reasonable doubt*, whereas here we are considering whether the evidence established *probable cause* for a reasonable officer to believe that appellant was committing a crime. See Slayton, 41 Va. App. at 107-08, 582 S.E.2d at 451. Thus, Pruitt is not controlling here.

Here, the officers actually observed appellant sitting alone in the Cadillac. After appellant exited the car, Officer Howe found a gun under the armrest, immediately beside where appellant had been sitting. There was no evidence that anyone else got into the car, other than Officer Howe when he retrieved the firearm, after appellant exited the Cadillac. Nothing indicated to the officers that anyone else had recently exited the car, especially as the officers saw no one else in the car when they had previously driven past the Cadillac. These circumstances were sufficient to provide a reasonable police officer with probable cause to believe that appellant had a firearm "about his person" as he was sitting in the car, in violation of Code § 18.2-308(A). Whether this evidence would also be sufficient to find appellant guilty beyond a reasonable doubt of possessing a concealed weapon is a question that is not relevant to the issue currently before us on appeal here.

We find that the trial court did not err in holding that the officers had probable cause to seize the firearm or in holding that the police had reasonable suspicion to detain appellant.

II. Questioning of Appellant

Appellant argues that he was arrested at the point when Trooper Flaherty started to handcuff him. Therefore, he contends, when Officer Howe asked him about the firearm, he should have first informed appellant of his Miranda rights. The trial court found that, because

- 7 -

these events occurred simultaneously, the officers did not need to inform appellant of his Fifth

Amendment rights before asking him the question.[4]  We disagree.

> "If the police take a suspect into custody and then ask him questions without informing him of the rights enumerated [in Miranda], his responses cannot be introduced into evidence to establish his guilt."  Berkemer v. McCarty, 468 U.S. 420, 429, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984).  However, "police officers are not required to administer Miranda warnings to everyone whom they question," and Miranda warnings are not required when the interviewee's freedom has not been so restricted as to render him or her "in custody."  Oregon v. Mathiason, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 97 S. Ct. 711 (1977).

> *       *       *       *       *       *       *

> Although a person temporarily detained pursuant to an "ordinary traffic stop[]" is not "in custody" for the purposes of Miranda, a detained motorist will be entitled to the protections set forth in Miranda if he or she "thereafter is subjected to treatment that renders him 'in custody' for practical purposes."  [Berkemer, 468 U.S.] at 440.

> Whether a suspect is "in custody" under Miranda is determined by the circumstances of each case, and "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest."  California v. Beheler, 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 103 S. Ct. 3517 (1983) (citation omitted).  The determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."  Stansbury v. California, 511 U.S. 318, 323, 128 L. Ed. 2d 293, 114 S. Ct. 1526 (1994).  If a reasonable person in the suspect's position would have understood that he or she was under arrest, then the police are required to provide Miranda warnings before questioning.

---

[4] The Commonwealth argues that New York v. Quarles, 467 U.S. 649 (1984), which discusses the public safety exception to Miranda, applies here.  However, pursuant to Quarles, that exception applies when the gun is missing – not when the police have already secured the weapon, as was the case here.  Id. at 659 (noting, "Officer Kraft asked only the question necessary to locate the *missing* gun before advising respondent of his rights.  It was *only after* securing the loaded revolver and *giving the warnings* that he continued *with investigatory questions* about the ownership and place of purchase of the gun." (emphasis added)).

- 8 -

Harris v. Commonwealth, 27 Va. App. 554, 563-64, 500 S.E.2d 257, 261-62 (1998); see also Berkemer, 468 U.S. at 442 ("[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."). We review *de novo* a trial court's determination that a suspect was in custody. See Thompson v. Keohane, 516 U.S. 99, 102 (1995) (noting, in a habeas case, that custody findings are reviewed *de novo*); see e.g., Cherry v. Commonwealth, 14 Va. App. 135, 140, 415 S.E.2d 242, 244-45 (1992) (implicitly conducting a *de novo* review of the trial court's finding that Cherry was not in custody); cf. Ornelas v. United States, 517 U.S. 690, 696-99 (1996) (finding that *de novo* review is the appropriate appellate standard for reviewing a trial court's determination that an objectively reasonable police officer would believe that he had probable cause or reasonable suspicion to stop a suspect). However, we review the trial court's factual findings that underlie the legal analysis for "clear error" while considering the evidence in the light most favorable to the Commonwealth, as the party that prevailed before the trial court. Harris, 27 Va. App. at 561, 500 S.E.2d at 260.

Preliminarily to our consideration of the trial court's legal finding, we must review the court's factual finding that the events here were "simultaneous." Although the trial court's finding was somewhat vague, after reviewing the testimony, we conclude that all of these events and statements could not have happened "simultaneously." Officer Howe's statement telling Trooper Flaherty to handcuff appellant, and the pulling of the firearm from the car with the accompanying statement, "for this," must have occurred prior to the handcuffing and questioning of appellant. Clearly, Officer Howe could not say "for this," which he said as he placed the gun on the roof of the car, while at the same time asking appellant if "the weapon belong[ed] to him." It is a physical impossibility for one person to make both statements simultaneously. According to the testimony, Officer Howe had already told Trooper Flaherty to handcuff appellant, and Officer Howe had already taken the gun out of the car and said "for this," before he asked

- 9 -

appellant if the gun was his. Therefore, to the extent that the trial court found all these events happened simultaneously, the court committed clear error. See id. The evidence supports only a finding that Officer Howe's question to appellant and the beginning of Trooper Flaherty's handcuffing of appellant occurred simultaneously.

The Commonwealth argues that the trial court did not err in its application of the law because the questioning and the handcuffing were simultaneous and, therefore, appellant was not questioned *after* he was in custody, but only while he was being placed into custody. Therefore, according to the Commonwealth, his Miranda rights had not attached at the time Officer Howe asked his question.[5]

The United States Supreme Court in Oregon v. Mathiason, 429 U.S. 492, 494 (1977), explained, "Our decision in Miranda set forth rules of police procedure applicable to 'custodial interrogation.' 'By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody *or otherwise* deprived of his freedom of action in any significant way.' 384 U.S. at 444." (Emphasis added.) Therefore, the question here is not whether the officers had completed the process of arresting appellant prior to asking him incriminating questions, but rather, given the circumstances in this case, whether appellant was deprived of his freedom to act in a significant way to a degree associated with arrest, such that his Miranda rights attached, before Officer Howe asked appellant the question about the firearm.

---

[5] The Commonwealth does not argue on appeal, and did not argue at trial, that the officers were concerned about their safety upon discovering the gun and handcuffed appellant as part of a temporary detention, as allowed by the Fourth Amendment analysis in Terry v. Ohio, 392 U.S. 1 (1968). Therefore, we do not comment in this opinion on the interplay between detention under the Fourth Amendment based on fear of a suspect's dangerousness and custody under the Fifth Amendment as discussed in Miranda. We specifically do not find that, if a suspect is handcuffed at any time during an interaction with officers, then he must be Mirandized before the police are allowed to ask him any questions.

Initially, the interaction between appellant and the officers was consensual, with the police simply talking to appellant. However, the officers' posture abruptly changed when the firearm was discovered. Officer Howe did not direct any question initially to appellant, but instead told Trooper Flaherty, who was standing with appellant, to put appellant into handcuffs. When the trooper asked for an explanation for this sudden shift in their approach to appellant, Officer Howe pulled the firearm out of the Cadillac, put it on top of the car, and said "[F]or this."

At this point, based on the officers' exchange, a reasonable person would conclude that he was not free to leave, but instead was in police custody – with his freedom being curtailed to a degree associated with arrest. See Stansbury, 511 U.S. at 325 ("An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned."). The officers then took further action that would confirm a reasonable person's impression that he was in custody – Trooper Flaherty began putting appellant in handcuffs. At the point when Trooper Flaherty began handcuffing appellant, he was physically holding appellant and restricting appellant's freedom of movement.

Before the trooper could complete the handcuffing, Officer Howe asked appellant about the firearm. Therefore, when Officer Howe asked his question, Trooper Flaherty had appellant under his physical control and was restricting his ability to act and to move about.[6] The logical conclusion that a rational person would draw at that point was that he was under arrest. See Orozco v. Texas, 394 U.S. 324, 325-26 (1969) (finding that the police were required to inform a suspect of his Miranda rights when they entered his bedroom, determined his identity, and immediately began asking him questions as he lay on his bed). Therefore, given the facts in this case, where the officers effectively made it clear to appellant that he was not free to leave and

_____

[6] As noted *supra*, the trial court found that Officer Howe did not ask his question before Trooper Flaherty began handcuffing appellant, but instead asked the question "simultaneously" with Trooper Flaherty's handcuffing of him.

- 11 -

was in police custody (with his freedom curtailed to a degree associated with arrest), even before Trooper Flaherty began putting the handcuffs on him, the officers should have Mirandized appellant before asking him potentially incriminating questions.

Neither policeman did anything that would have suggested to a reasonable person that appellant was only being held temporarily or that he was not under arrest. The only explanation for the sudden decision to handcuff appellant was the discovery of a firearm. Especially given the progression of circumstances here, a reasonable person would certainly conclude that the officers had probable cause to believe a crime was committed and were in fact arresting appellant.

In short, based on the circumstances here, a reasonable person would believe that he was deprived of his freedom based on the fact that the first officer told the second officer to handcuff him, the second officer had responded with "why," and the first officer had produced a gun and said, "for this." Thus, appellant was deprived of his freedom and was effectively in police custody before Trooper Flaherty even put the handcuffs on him – and before Officer Howe asked appellant if the gun was his. Faced with this situation, a reasonable person in appellant's position would conclude, prior to the locking of the handcuffs, that he was no longer free to leave, but instead was being held in custody by the police. Indeed, the progression of the encounter proves appellant was deprived of his freedom before Officer Howe asked about the firearm. Therefore, given the requirements of <u>Miranda</u>, we find that Officer Howe should have informed appellant of his <u>Miranda</u> rights before asking him if the firearm belonged to him.

CONCLUSION

The trial court did not err in denying the motion to suppress the firearm.  However, the court did err when it found appellant was not entitled to <u>Miranda</u> warnings before Officer Howe asked him if the firearm was his.[7]  Consequently, his statement in response to the officer's question should have been suppressed.  Therefore, we overturn appellant's conviction and remand this case for retrial, consistent with this opinion, if the Commonwealth be so inclined. <u>See</u> <u>Britt v. Commonwealth</u>, 276 Va. 569, 576, 667 S.E.2d 763, 575 (2008).

<u>Reversed and remanded.</u>

---

[7] The Commonwealth does not argue that the error in admitting appellant's statement was harmless.