**Salem**

GARY WAYNE WASS

v.

COMMONWEALTH OF VIRGINIA

No. 1595-85

Decided September 1, 1987

**COUNSEL**

Leslie E. Allen III (Harris and Black, on brief), for appellant.

Donald R. Curry, Assistant Attorney General, (Mary Sue Terry, Attorney General, on brief), for appellee.

**OPINION**

**COLEMAN, J.** — Appellant, Gary Wayne Wass, was convicted in a bench trial of cocaine and marijuana possession and sentenced to serve concurrent terms of five years and thirty days, respectively. On appeal, Wass challenges the admissibility of statements he made to police officers during the search of his home and before being informed of his constitutional rights. He asserts that the statements were the result of custodial interrogation and should have been suppressed as violative of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Because we find that Wass was "in custody" at the time he was questioned, the trial court erred by admitting the statements. We reverse the convictions and remand for such further proceedings as the Commonwealth deems appropriate.

In *Miranda*, the Supreme Court announced the now well established principle that statements stemming from custodial interrogation are inadmissible unless certain procedural safeguards

effective to secure the privilege against self-incrimination are provided. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444; *see May v. Commonwealth*, 3 Va. App. 348, 352, 349 S.E.2d 428, 430 (1986). Viewing the total circumstances in this case in the light most favorable to the Commonwealth, *Crumble v. Commonwealth*, 2 Va. App. 231, 233, 343 S.E.2d 359, 361 (1986), we hold that the evidence was insufficient to support the conclusion necessarily reached by the trial court that Wass was not in custody for purposes of *Miranda* when questioned.

On May 10, 1985, officers from the Lynchburg Police Department raided a house in Lynchburg to execute a search warrant. Gary Wass and his sister-in-law, Vicky Wass, were at the house when the raid began. Approximately six officers first arrived on the scene by dump truck. The dump truck was followed by another truck containing five or six additional officers. Within three to four minutes after the two trucks appeared, four more officers arrived by helicopter. When Wass approached the officers in the dump truck, they informed him of the search warrant for his home. Wass testified that from the moment the first officers emerged from the dump truck, he did not feel free to go anywhere except with them.

The police officers knew before the search that two large Doberman Pinscher guard dogs and loaded firearms were kept at the house. When they arrived, both dogs were there and one tried to attack an officer. Wass was told to control the dogs or they would be killed. One dog was contained before the search but the other fled. Commander Reynolds who arrived in the helicopter was informed that the house had been secured but that one dog was loose. Reynolds directed the officers to set up an "exterior perimeter" around the house to prevent the second dog from returning and injuring someone. Reynolds also stationed an officer at the front door and another just inside the front door "in the event that the animal were to try to come and go back into the house." All officers stationed at the door and in the perimeter defense were armed, some with shotguns. The officers remained at their stationed positions throughout the search even though the second dog was contained some time during the search.

Reynolds approached Wass and asked "did he understand he was in fact not under arrest" and he "was free to go at any time, because he was not under arrest." Wass stated that he understood. Reynolds then told Wass that when the police conducted a search they "liked for the property owner to be present if they wished to be present so that they can see what we do; if we open anything, they can see, if we remove anything they can see it; if anything is destroyed or damaged in any way, they can observe whether or not the police actually were the ones who did the damage if in fact it was alleged."

Once inside the house, Wass was asked to sit in a chair while the downstairs was searched. Both contraband and drug paraphernalia were found downstairs, and Wass told the police that the downstairs bedroom was occupied by his brother and sister-in-law. Reynolds asked Wass what was upstairs. Wass replied that the upstairs bedroom was his, which he occupied alone.

Upstairs, the police found a thermos containing a bag of white powder later analyzed as cocaine. Reynolds asked Wass if the cocaine was his, and Wass admitted that it belonged to him. Also found in Wass's bedroom was a "photo cube" containing three bags of marijuana and a "cake tin" containing marijuana and drug paraphernalia. Wass was specifically asked about the contents of the "cake tin," and he admitted the items were his.

After the police completed the search, Wass was arrested. At no time prior to or after arrest was Wass given the *Miranda* warnings. After he was arrested, Wass was not subjected to interrogation and made no further statements.

The critical issue is whether Wass was in custody or otherwise deprived of his freedom of action in any significant way. *Miranda*, 384 U.S. at 444; *May*, 3 Va. App. at 352, 349 S.E.2d at 430. Since the Supreme Court first decided *Miranda* in 1966, the definition of "custodial interrogation"[1] has evolved through a long line of cases.

---

[1] The term "custodial interrogation" has presented the need to define interrogation as well as custody, but for the purposes of this opinion we need only address the issue of what constitutes custody for purposes of *Miranda*. The issue of whether Wass was subjected to interrogation is not in dispute.

■ Although the defendants in *Miranda* and its companion cases were questioned at police headquarters, the Supreme Court soon made it clear that an accused could be "in custody" and thus entitled to *Miranda* safeguards in locations other than police headquarters. *See Orozco v. Texas,* 394 U.S. 324 (1969). Circumstances which deprive a person of his freedom to leave or freedom of action render him in custody for purposes of *Miranda. Id.* at 327.

■ Questioning in a "coercive environment" alone is insufficient to trigger the need for *Miranda* warnings. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). In *Mathiason,* although the accused was questioned in the coercive environment of a police station, he came there voluntarily and at the close of the interview did, in fact, leave the station without hindrance. The Court recognized that any interview with a police officer may have coercive aspects but that alone is insufficient to render one in custody. The Court refused to require police officers to administer *Miranda* warnings to everyone whom they question; there must first be a restriction on the person's freedom before *Miranda* applies.

■ The totality of circumstances must be considered in determining whether the suspect is in custody when questioned, but the "ultimate inquiry is simply 'whether there is a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (quoting *Mathiason,* 429 U.S. at 495). Clearly not all questioning of suspects who have been detained by the police constitutes custodial interrogation for purposes of *Miranda. Berkemer v. McCarty,* 468 U.S. 420, 442 (1984); *Mathiason,* 429 U.S. at 495. It is only when a suspect's freedom of movement is curtailed to a degree associated with formal arrest that the suspect is entitled to the full protection of *Miranda.* In making that determination, the situation must be viewed from the vantage point of "how a reasonable man in the suspect's position would have understood his situation." *Berkemer,* 468 U.S. at 442. Thus, we must evaluate the total situation and circumstances and determine how a reasonable man in Wass's position would have understood his situation.

■ To determine whether a restraint is "custodial" for *Miranda* purposes, "a host of factors must be considered." *United States v. Streifel,* 781 F.2d 953, 961 (1st Cir. 1986). Among the factors that must be considered are whether a suspect is ques-

tioned in familiar or neutral surroundings, the number of police officers present, the degree of physical restraint, and the duration and character of the interrogation. *Id.* at 961 n.13 (citing 1 W. LaFave & J. Israel, *Criminal Procedure* § 6.6 (1984)). Whether or when probable cause to arrest exists and when the suspect becomes the focus of the investigation are relevant factors to consider. *Alberti v. Estelle*, 524 F.2d 1265, 1267 (5th Cir. 1975), *cert. denied*, 426 U.S. 954 (1976). "[T]he language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual" may be significant factors as well. *United States v. Bautista*, 684 F.2d 1286, 1292 (9th Cir. 1982) (quoting *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1982)).

However, no single factor alone may necessarily establish custody for *Miranda* purposes, and not all factors may be relevant in a given case. The fact that the investigation had become accusatory and focused upon a suspect is not necessarily determinative of custody, *Smith v. Commonwealth*, 219 Va. 455, 470, 248 S.E.2d 135, 144 (1978), and probable cause for arrest, standing alone, does not trigger the right to receive *Miranda* warnings. *United States v. Woods*, 720 F.2d 1022, 1031 (9th Cir. 1983). The list of relevant circumstances is not exhaustive. The circumstances of each case must be considered from the viewpoint of a reasonable person in the suspect's situation.

In the present case Wass was interrogated at his home, presumptively a non-coercive setting. But even in the home, police domination of the scene may produce a coercive environment and an abridgment of freedom, and *Miranda* warnings may be required before questioning. *See Orozco,* 394 U.S. at 326-27; *Coleman v. Commonwealth*, 226 Va. 31, 47, 307 S.E.2d 864, 872 (1983), *cert. denied*, 465 U.S. 1109 (1984).

The police told Wass that he was not under arrest and was free to leave but they also told him that they liked the resident to be present when they conducted a search. "Though informing a suspect that he is not under arrest is one factor frequently considered to show lack of custody, it is not a talismanic factor." *Davis v. Allsbrooks*, 778 F.2d 168, 171-72 (4th Cir. 1985) (citations omitted). In *Davis* the court held that the failure to inform a sus-

pect that he was not in custody did not necessarily mean that he was in custody. Similarly, we hold that informing a suspect that he is not in custody and is free to leave does not necessarily mean that he is not in custody. Other circumstances may dictate a finding that custody exists.

Wass was confronted by at least twelve officers, all armed, some of whom were carrying shotguns, arriving in two trucks and a helicopter. The trucks were parked at the driveway gate, and some of the officers surrounded the house. Wass was ordered to secure his dogs. One was confined in a car, and an officer threatened to kill the other if Wass could not control him. Commander Reynolds directed his officers to form an "exterior perimeter" around the house. Two more officers were stationed at the door of the house, and while all of these steps were taken to "prevent the second dog . . . from coming back and possibly injuring one of the officers," the record indicates that the officers stayed in position after the second dog had been secured. The record portrays a situation in which the police officers, through an impressive display of force and manpower, seized control of Wass's private residence and secured the premises in a manner suggestive of a military maneuver. In our view, the situation is susceptible of but one interpretation: a reasonable man confronted with this armed display of manpower at his house, even though earlier told he was not under arrest and was free to leave, could only conclude that he was in fact not free to leave and was expected to cooperate. The atmosphere was exactly the type of police dominated environment described in *Miranda*.

■ We do not suggest that when police are conducting a raid or searching premises where drugs may be found, or entering an unknown situation, that protective measures should not be employed for the safety and security of the officers. However, such protective measures may also give rise to a custodial situation for *Miranda* purposes. If security measures produce a coercive environment and restrict a suspect's freedom of movement to the degree associated with a formal arrest, the suspect is entitled to the procedural safeguards afforded by *Miranda*.

In the present case the number of armed officers, their manner of arrival, the methods used to secure the house, and the threat to kill Wass's dog, all contribute to a finding that a reasonable man in Wass's position would have felt he was not free to leave the

premises despite advice to the contrary. After the officers arrived and secured the house, Wass was taken inside and asked to sit in a chair while a search was conducted of the downstairs area. Drugs and paraphernalia were found at that time. The search moved upstairs, an area Wass admitted was occupied solely by him. More drugs and paraphernalia were found in Wass's presence. At this point, when the police asked Wass about ownership of the drugs found in his bedroom, they contend, and the trial court accepted, that Wass was still free to leave. Regardless whether the officers would have allowed Wass to leave, no reasonable person would have felt free to leave. We therefore find that Wass was in custody at the time he admitted ownership of the drugs, and the statement was elicited in violation of *Miranda* and should have been suppressed. Because we cannot say that admission of Wass's statement was harmless beyond a reasonable doubt, *see Chapman v. California*, 386 U.S. 23 (1967), we reverse and remand for a new trial with directions that Wass's statements be excluded.

*Reversed and remanded.*

Koontz, C.J., and Moon, J., concurred.