COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Willis and Senior Judge Hodges
Argued at Norfolk, Virginia


SANTAREJAI ANTARINN BROWN

                                        MEMORANDUM OPINION[*] BY
v.          Record No. 1893-96-1        JUDGE SAM W. COLEMAN III
                                             JULY 22, 1997
COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                        Jerome B. Friedman, Judge

            Andrew G. Wiggin (Asha S. Pandya, Assistant
            Public Defender; The Law Office of Donald E.
            Lee, Jr. and Associates, on briefs), for
            appellant.

            Ruth Ann Morken, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


    In this criminal appeal, we determine whether the

defendant's Fourth Amendment right to be free from unreasonable

seizures and his Fifth Amendment right to be given Miranda

warnings were violated.  In the trial court, the defendant

initially moved to suppress the evidence on the grounds that he

was seized without probable cause or reasonable suspicion and

that he was interrogated by the police without being informed of

his Miranda rights.  The trial judge denied the defendant's

motion and, after entering conditional guilty pleas, the

defendant was convicted for possession of cocaine with intent to

distribute, conspiracy to distribute cocaine, and possession of a

---

    [*] Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

firearm while in possession of cocaine.  Finding no error, we affirm the convictions.

On April 12, 1995, a SWAT team from the Virginia Beach Police Department was executing a search warrant for cocaine and weapons at 618 Fox Creek Court in Virginia Beach.  Officer W. E. Hodges, Jr. was assigned by the SWAT team to "cover the outer perimeter" of the house.  Around 10:30 a.m., he and Officer Spain were stationed in their vehicle approximately one half block from the house, but could not see the house from their position.

Officer Hodges was in radio contact with the officers who were executing the search warrant and was informed that "there was a possibility that some people" had run out the back of the house and were at large in the neighborhood, but was not given a description of the people.[1]  After receiving this report, Officers Hodges and Spain rode around the neighborhood "to see if [they] could see anything that was suspicious."  Approximately five to ten minutes later, they saw the defendant walking in the opposite direction from the house.  He was "moving his head looking around [from] side to side," was wearing socks but no shoes and had one hand under his shirt "like [it] was near his waistband."

---

[1] The defendant contends that no evidence in the record established that Officer Hodges received the information concerning suspects fleeing the house from the officers conducting the search.  This argument is without merit.  The record reflects that Officer Hodges testified that he was in radio contact with one of the narcotics detectives executing the search warrant and was informed of the possibility that people had run out the back of the house.

Officer Hodges exited the police vehicle and approached Brown cautiously, identifying himself as a police officer and telling Brown several times to put his hands where Officer Hodges could see them. Officer Hodges conducted a brief pat down and asked Brown "where he was coming from." Brown told him that he was coming from his house and that he had left because "somebody was breaking into" the house. Officer Hodges then told Brown that he was being detained until the officer in charge of the search could come ask him some questions. Officer Hodges asked Brown if there was anything dangerous in the house. Brown told him that there was a .22 caliber gun in an upstairs closet. Although Hodges could not remember whether they ever specifically mentioned 618 Fox Creek, Hodges understood that to be the house they were discussing.

Approximately fifteen minutes after Officer Hodges detained the defendant, Detective Hayden, the officer in charge of executing the search warrant, arrived and asked Brown how many people had been in the house and who they were. Detective Hayden then asked Brown to return to the house with him and Brown voluntarily agreed. On the way to the house, Detective Hayden advised Brown of his <u>Miranda</u> rights and asked him again why he had left the house and to identify anyone who had been in the house when the police originally arrived to execute the search warrant.

THE SEIZURE

On appeal, determinations of reasonable suspicion and probable cause require de novo review. Ornelas v. United States, 116 S. Ct. 1657, 1663 (1996). However, a trial court's findings of historical fact are reviewed only for credible evidence to support them and "due weight" must be given to "inferences drawn from those facts by resident judges and local law enforcement officers," and to "a trial court's finding that [an] officer was credible and [that his or her] inference was reasonable." Id.

If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, he may detain the person to conduct a brief investigation without violating the Fourth Amendment's protection against unreasonable searches and seizures. See Terry v. Ohio, 392 U.S. 1, 27 (1968). The reason for stopping an individual need not rise to the level of probable cause, but must be more than an "inchoate and unparticularized suspicion or 'hunch.'" Id. at 27. When determining whether an officer's suspicion is reasonable, we look to the totality of the circumstances, see United States v. Sokolow, 490 U.S. 1, 8 (1989), and view the facts "objectively through the eyes of a reasonable police officer with the knowledge, training and experience of the investigating officer." Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989).

In this case, we hold that Officer Hodges' investigatory

- 4 -

detention of Brown was justifiable and based upon reasonable, articulable suspicion.  Officer Hodges knew that there was a possibility that people had run from the house.  Because "a warrant to search . . . carries with it the limited authority to detain the occupants of the premises while a proper search is conducted," Michigan v. Summers, 452 U.S. 692, 705 (1981), the police were justified in detaining Brown to determine whether he had fled the house and to determine who else may have been in the house at the time.  See Williams v. Commonwealth, 4 Va. App. 53, 59, 354 S.E.2d 79, 85 (1987) (holding that a valid Terry stop occurred when officers stopped a suspect who had just left a house the police were searching pursuant to a warrant).  Officer Hodges saw Brown walking down the street in the neighborhood within minutes of hearing that persons may have fled the home. Brown was wearing socks, but no shoes.  He was looking from side to side and had his hand in his waistband.  Based on the totality of the circumstances, Officer Hodges had reasonable suspicion to detain Brown in order to briefly investigate whether he had or was committing a crime.

MIRANDA WARNINGS

The necessity of giving Miranda warnings arises only when an individual is questioned by the police while the person is in custody.  Smith v. Commonwealth, 219 Va. 455, 470, 248 S.E.2d 135, 144 (1978), cert. denied, 441 U.S. 967 (1979).  When determining whether a suspect is in custody at the time of police

interrogation, we look to the totality of the circumstances; however, the "ultimate inquiry is simply `whether there is a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).  We view the circumstances as would the reasonable man in the suspect's position.  Berkemer v. McCarty, 468 U.S. 420, 442 (1984).  In so doing, we consider many factors, including: 1) the surroundings; 2) the number of officers present; 3) the degree of physical restraint; 4) the duration and character of the interrogation; 5) the existence of probable cause to arrest; 6) the time when the suspect becomes the focus of the investigation; 7) the language used by the officer to summons the individual; and 8) the extent to which the suspect is confronted with evidence of guilt.  Wass v. Commonwealth, 5 Va. App. 27, 33, 359 S.E.2d 836, 839 (1987).

Here, the circumstances surrounding the seizure and questioning of Brown do not rise to the level of a custodial interrogation.  During the initial stop by Officer Hodges, the officer was merely conducting an investigative detention, which does not, standing alone, place a suspect in custody for Miranda purposes.  See Commonwealth v. Milner, 13 Va. App. 556, 558, 413 S.E.2d 352, 353 (1992).  There was nothing about the encounter that was inherently coercive or that would lead a reasonable person to believe he was in custody.

When Detective Hayden arrived, he asked Brown to accompany him to the house, which Brown did voluntarily.  At no time did the police officers' actions intimate to the defendant that he was in custody or in a situation equivalent to a "formal arrest." Thus, <u>Miranda</u> warnings were not necessary and Brown's statements were not made in violation of his rights.

For the foregoing reasons, we affirm the convictions.

<u>Affirmed</u>.