# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

David B. Carter

July 16, 1998

Case Nos. (Indictments) 98-661 through 98-668

BY JUDGE EDWARD L. HOGSHIRE

A hearing in the above-styled matter was conducted *ore tenus* on July 1, 1998, upon the defendant's Motion to Suppress certain statements made to Detectives G. W. Mills and M. R. Bishop of the Charlottesville Police Department. After reviewing the brief of the parties and considering the evidence presented at the hearing, for the reasons outlined below, I am denying the motion.

The defendant asserts that the police obtained his confession in violation of his constitutional rights and that further interrogation occurred after the defendant had invoked his right to have counsel present before questioning continued. He argues that the Commonwealth's actions violated the rule enunciated in *Edwards v. Arizona*, 451 U.S. 477 (1981), that the police must cease further questioning when a defendant requests an attorney, citing also, *Smith v. Illinois*, 469 U.S. 91 (1984), and *Minnick v. Mississippi*, 498 U.S. 146 (1990).

The Commonwealth maintains that the questioning involved, although conducted at the police department, was not a "custodial" interrogation and even if it was, that the defendant never unequivocally asserted his Fifth Amendment right to counsel to invoke the precepts of *Edwards*. The Commonwealth relies on a number of cases, including *Bottenfield v. Commonwealth*, 25 Va. App. 316 (1997), *Wass v. Commonwealth*, 5 Va. App. 27 (1987), *Davis v. Allsbrook*, 778 F.2d 168 (4th Cir. 1985), and *Burket v. Commonwealth*, 248 Va. 596, 602 (1994), in asserting that the defendant was

not in custody when he gave his statement and that, therefore, his *Miranda* rights did not attach.

The facts in this case, including the transcript from the preliminary hearing containing pertinent parts of the interview, established that the police telephoned the defendant on December 20, 1997, and requested that he come to the Charlottesville Police Department to be questioned about his role in an alleged sexual assault on a minor. The defendant agreed to meet Detective Bishop at the Charlottesville Police Station on December 23, 1997. The evidence further revealed that the defendant arrived for the interview at approximately 12:30 p.m. after being driven there by his brother. The police did not place the defendant under arrest upon his arrival but directed him to an interview room on the second floor of the police station. The defendant stated that no one accompanied him to the interview room. Detective Mills later joined Detective Bishop for the interview, which was tape-recorded and lasted less than one hour. According to the defendant, the door of the room was left "cracked" or partially open during the interview. The room itself was described as having dimensions of six feet by ten feet and as containing a desk and two chairs. The defendant executed an advice-of-rights form at approximately 12:58 p.m. in which he indicated his willingness to speak with the officers. There was no mention to the defendant as to whether or not he was free to leave. Although the evidence conflicts somewhat on this point, the officers confronted the defendant with their belief that he had committed the subject offenses. There was no real question that the defendant was the prime suspect in the investigation.

Shortly after Detective Mills advised the defendant of his *Miranda* rights, the defendant, after being asked if he understood his rights, replied, "I've been working for the last, well the last four years have been off and on with work. And I can't afford a lawyer, so … ." At that point, Detective Mills stated, "Okay." To which the defendant responded, "If I could get one appointed to me … ." Rather than stopping the questioning at that point, Detective Mills continued by saying "And it's 12:58. Do you want to talk to us now?" To which the Defendant responded, "Yeah," and proceeded to respond to the questions of the police and to give his incriminating account of the events which later proved to be the basis of his arrest. The Commonwealth played the tape of the interview in court. The police did not search, frisk, or place the defendant in handcuffs prior to the conclusion of the interview.

The threshold question here is whether the interrogation was custodial in nature so as to invoke Fifth Amendment protections. *Miranda* rights do not apply to a non-custodial interview, thus a defendant's request that questioning cease in a non-custodial setting does not preclude continued police

questioning. See *Davis v. Allsbrooks*, 778 F.2d 168 (4th Cir. 1985) (explaining the inapplicability of *Miranda* warnings when a defendant is not in custody at the time of questioning). In *Wass v. Commonwealth*, 5 Va. App. 27, 33, 359 S.E.2d 836 (1987), the Court of Appeals cites a number of factors to be considered when assessing whether a particular interrogation is custodial for *Miranda* purposes. These factors include the degree of physical restraint, the method of summoning the suspect to the interview, the duration and character of the interview, the degree of pressure used to detain the suspect, the extent to which he is confronted with evidence of guilt, whether the surroundings are neutral or familiar, the number of police officers present, when the suspect becomes the focus of the investigation, and the physical surroundings of the interview. *Wass*, 5 Va. App. at 32-33. The Court made it clear that no single factor alone may necessarily establish custody for Fifth Amendment purposes and not all factors may be pertinent in each case.

In *Davis v. Allsbrook, supra*, an officer left a note at the defendant's grandmother's house asking the defendant to come in for questioning. Two days later, the defendant arrived at the station to speak with detectives. The detectives advised the defendant of his *Miranda* rights and after a two-hour interview, the detectives asked the defendant to return to the station later that evening. When the defendant did not arrive on time, the officers looked for him in his neighborhood. The officers offered and the defendant accepted a ride to the station. The officers again advised the defendant of his *Miranda* rights, and he informed the detectives that he no longer wanted to talk about the case. The detectives continued to question the defendant, and he eventually confessed.

The Fourth Circuit, in *Davis*, found that despite the fact that the interview was conducted at the police station and that the defendant had clearly asserted that he wanted to end the questioning at one point in time, no *Miranda* violation had occurred. The court there noted that the U.S. Supreme Court has established that in determining whether custody exists, "the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement," citing *California v. Beheler*, 463 U.S. 1121 (1983), and *Oregon v. Mathieson*, 429 U.S. 492 (1977).

In applying the reasoning of *Davis, supra*, when seen in light of the Virginia Court of Appeal's analysis set forth in *Wass, supra*, the interview in this case does not appear to be a custodial one sufficient to evoke the protections asserted by the defendant. Mr. Carter voluntarily met with the officers at the police station to discuss the subject offenses with the detectives. The detectives made the request via telephone and the defendant arranged for his own transportation to the interview, which was brief in duration and

conversational in tone. The defendant stated that the door remained partially open throughout the interview and that he had not been escorted to the six by ten foot interview room. The detectives did not frisk, search, or place the defendant in cuffs. The tone of the questions was not coercive or threatening. To invoke *Miranda*, the defendant must show that the detectives placed him in a custodial situation.

The facts of this case are similar to those of *Davis*. The defendant, in his brief and arguments, has cited no case in which an interview conducted in this fashion was deemed to be custodial in nature. Since this Court concludes that the interview was not custodial, it is unnecessary to address the significance of the defendant's remarks about needing to have an attorney appointed.

Accordingly, for the reasons noted above, the court denies defendant's Motion to Suppress.