COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Felton and Senior Judge Hodges
Argued at Chesapeake, Virginia


BRANDON KEITH JONES
                                   MEMORANDUM OPINION* BY
v.    Record No. 1536-01-1          JUDGE LARRY G. ELDER
                                        OCTOBER 1, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    H. Thomas Padrick, Judge

          Andrew G. Wiggin (Donald E. Lee, Jr. &
          Associates, on briefs), for appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Brandon Keith Jones (appellant) appeals from his bench

trial convictions for murder, attempted robbery, conspiracy, and

use of a firearm in the commission of murder or attempted

robbery.  On appeal, he contends the trial court's refusal to

suppress his statements to police was erroneous because he made

the statements during a custodial interrogation conducted before

he was informed of his Miranda rights.  We hold, under the

totality of the circumstances, that appellant was not in custody

when he admitted, prior to being Mirandized, that he was present

at the scene when the charged crimes were committed and fled

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

with the perpetrator immediately thereafter.  Therefore, we affirm.

On appeal of a denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), holds that "statements stemming from custodial interrogation are inadmissible unless certain procedural safeguards effective to secure the privilege against self-incrimination are provided.  Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"  Wass v. Commonwealth, 5 Va. App. 27, 29-30, 359 S.E.2d 836, 837 (1987) (quoting Miranda, 384 U.S. at 444, 86 S. Ct. at 1612).  "[T]he issue whether a suspect is 'in custody,' and therefore entitled to Miranda warnings, presents a mixed question of law and fact . . . ."  Thompson v. Keohane, 516 U.S. 99, 102, 116 S. Ct. 457, 460, 133 L. Ed. 2d 383 (1995).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc), but we review de novo the trial court's application of defined legal

-

standards to the particular facts of the case, Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996).

In determining whether a suspect is in custody when questioned, "[t]he totality of circumstances must be considered." Wass, 5 Va. App. at 32, 359 S.E.2d at 839. "[T]he question is not whether a reasonable person would believe he was not free to leave, but rather whether a person would believe he was in police custody of the degree associated with formal arrest." 2 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure § 6.6(c), at 526 (2d ed. 1999). "The determination 'depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" Harris v. Commonwealth, 27 Va. App. 554, 564, 500 S.E.2d 257, 262 (1998) (quoting Stansbury v. California, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529, 128 L. Ed. 2d 293 (1994)).

Appropriate factors for consideration include the nature of the surroundings in which the questioning takes place, "the number of police officers present, the degree of physical restraint, and the duration and character of the interrogation." Wass, 5 Va. App. at 32-33, 359 S.E.2d at 839. Further, "[a]n officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant . . . to the extent they

-

would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her 'freedom of action.'" Stansbury, 511 U.S. at 325, 114 S. Ct. at 1530 (quoting Berkemer v. McCarty, 468 U.S. 420, 440, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317 (1984)) (other citations omitted). Thus, where communicated to the suspect, the focus of the investigation on that suspect, the existence of probable cause to arrest that suspect, and "'"the extent to which [the suspect] is confronted with evidence of guilt"'" are also relevant factors for consideration. Wass, 5 Va. App. at 33, 359 S.E.2d at 839 (quoting United States v. Bautista, 684 F.2d 1286, 1292 (9th Cir. 1982) (quoting United States v. Booth, 669 F.2d 1231, 1235 (9th Cir. 1982))).

The fact that an officer has "[i]nform[ed] a suspect that he is not in custody and is free to leave" is relevant in the analysis but "does not necessarily mean that [the suspect] is not in custody." Wass, 5 Va. App. at 34, 359 S.E.2d at 840 (holding such a statement had little impact where presence of twelve armed officers to execute search warrant, officers' manner of arrival, methods used to secure house, and threat to kill suspect's dog, combined to require finding that reasonable man in suspect's position would have felt he was not free to leave). Conversely, "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects

-

are free to come and go until the police decide to make an arrest." Stansbury, 511 U.S. at 325, 114 S. Ct. at 1530.

The fact that the questioning occurs in a police station or other "coercive environment" does not automatically render the interrogation custodial and is simply a factor for inclusion in the analysis of whether a reasonable person would have believed he was in custody. See Oregon v. Mathiason, 429 U.S. 492, 495, 97 S. Ct. 711, 714, 50 L. Ed. 2d 714 (1977). Applying this principle in Oregon v. Mathiason, the Court held a station house interrogation was not custodial where the accused, a parolee, came to the station voluntarily, despite the fact that he was told, falsely, that his fingerprints had been found at the scene of a burglary. Id. The Court reasoned:

> Any interview by one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody."

Id.

In a case similar to appellant's, the Ninth Circuit Court of Appeals concluded a confession given during a station house

-

interrogation also was not custodial.  Thompson v. Keohane, 145 F.3d 1341, 1341 (9th Cir. 1998).  Although the Ninth Circuit's affirmance in Thompson was "without published opinion," id., the United States Supreme Court detailed the relevant factual findings and procedural history in an earlier published opinion in which it determined only the proper standard for appellate review and remanded to the Court of Appeals for application of that standard.  Thompson, 516 U.S. at 116, 116 S. Ct. at 467.

In Thompson, the defendant drove himself to the station house at the request of police, "purportedly" to identify the belongings of his former wife, who had been stabbed.  516 U.S. at 102-03, 116 S. Ct. at 460-61.  After Thompson identified the items, he remained at headquarters for two more hours while two unarmed troopers "continuously questioned him in a small interview room and tape-recorded the exchange. . . .  Although [the troopers] constantly assured Thompson he was free to leave, they also told him repeatedly that they knew he had killed his former wife" and said that searches of his home and his truck were then being conducted pursuant to a warrant.  Id. at 103, 116 S. Ct. at 461.  The trial court ruled that Thompson was not "in custody" for Miranda purposes, id. at 105, 116 S. Ct. at 461-62, and the Ninth Circuit, on remand, presumably applying an independent standard of review as directed by the Supreme Court, see id. at 116, 116 S Ct. at 467, affirmed without published opinion, see 145 F.3d 1341.

-

We hold the circumstances in appellant's case were less likely to lead a reasonable person to conclude he was in custody than were the circumstances in Thompson.  In appellant's case, although appellant rode to the police station with Detective Hoffman rather than driving his own vehicle as Thompson did, Hoffman, unlike the troopers in Thompson, did not use a ruse to get appellant to the police station and told appellant from the outset of their encounter that his purpose in asking appellant to accompany him was so that Hoffman could talk to him about an incident that occurred in Virginia Beach.[1]  Like in Thompson, Hoffman told appellant repeatedly that he was not under arrest and was free to leave at any time, both before they arrived in the interview room and during the interview itself.  See also State v. Northrop, 568 A.2d 439, 444 n.7 (Conn. 1990) (in Miranda "in custody" determination, minimizing impact of fact that defendant had no automobile at police station and "was at the mercy of the police for transportation," given absence of evidence that police "would not have heeded the defendant's request to depart at any time and drive him . . . home").  The entire process, from when Detective Hoffman first telephoned and

_____

[1] The use of a ruse was relevant only to the extent that Thompson may have become aware of it when the troopers began to question him about his former wife's murder and then only insofar as it would have impacted a reasonable person's perception of whether he was in custody.  The ruse itself, just like the ruse Detective Hoffman employed in telling appellant that his friend admitted he and appellant witnessed the

-

met with appellant at his girlfriend's house until appellant was read his Miranda rights in the interview room at the police station, lasted only about two hours. See Thompson, 516 U.S. at 103, 116 S. Ct. at 461 (involving two-hour interview); Davis v. Allsbrooks, 778 F.2d 168, 171 (4th Cir. 1985) (holding two-hour interview was not excessive because it was "not a marathon session designed to force a confession"). Appellant agreed to Detective Hoffman's non-threatening requests for appellant to accompany him at each stage during the process, and appellant was not searched or restrained at any time. Detective Hoffman reminded appellant on multiple occasions during the questioning that appellant was not in custody and had come to the police station "on [his] own."

Unlike in Thompson, in which the officers told Thompson repeatedly that they knew he had killed his former wife, Detective Hoffman said that appellant probably had been "in the wrong place at the wrong time," that Hoffman was "not trying to pin something on [appellant]," and that perhaps appellant's fingerprint was on the victim's telephone because appellant had tried to call for help after the shooting. Thus, unlike in Thompson, Hoffman did not convey to appellant that Hoffman believed him to be a suspect in the case. Appellant's knowledge of his actual participation in the events was irrelevant to the

shooting, was irrelevant to the custody determination. See Mathiason, 429 U.S. at 495-96, 97 S. Ct. at 714.

-

determination, for "[t]he 'reasonable person' test presupposes an innocent person." Florida v. Bostick, 501 U.S. 429, 438, 111 S. Ct. 2382, 2388, 115 L. Ed. 2d 389 (1991) (applying principle in evaluating whether suspect was illegally seized when he consented to search). As soon as appellant admitted that one of his companions was the shooter, he was given his Miranda rights.

Although the Supreme Court in Mathiason, 429 U.S. at 495, 97 S. Ct. at 714, and the trial court in Thompson, 516 U.S. at 104-05, 116 S. Ct. at 461, noted that the accused in each of those cases was allowed to "leave the police station without hindrance" at the completion of the interview in which he confessed, we hold that this fact is without legal significance. Manifestly, the period of time relevant to determining whether an individual is in custody is the period before the individual confesses involvement. As other courts have recognized, whether a suspect is permitted to leave after confessing to a particular crime has no bearing on whether his pre-confession presence was custodial. See, e.g., Barfield v. Alabama, 552 F.2d 1114, 1118 (5th Cir. 1977) (holding fact that defendant in Mathiason was allowed to leave police station after confessing was not a basis for distinguishing it from Barfield's case and that investigating officer "would have been derelict in his duty had he allowed her to go free"); Roman v. State, 475 So. 2d 1228, 1231-32 (Fla. 1985) (holding that "[c]ertainly the noncustodial atmosphere leading up to a confession and probable cause would

-

thereby be expected to be converted to a custodial one" and that the "occasions would be rare when a suspect would confess to committing a murder and then be allowed to leave").

We hold the totality of the circumstances supports the trial court's ruling that a reasonable person in appellant's position would not have believed his "freedom of movement [had been] curtailed to a degree associated with formal arrest" when he admitted that he was present at the scene of the shooting and fled with the perpetrator. Berkemer, 468 U.S. at 442, 104 S. Ct. at 3151. Thus, the trial court's refusal to suppress the statements appellant made before and after being read his Miranda rights was not error.

For these reasons, we affirm appellant's convictions.

Affirmed.

-