## CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

    v.

Ernest Allen Martin

December 17, 2004

Case No. (Criminal) CR04-2542

BY JUDGE CHARLES E. POSTON

    This case is before the Court upon the Defendant's Motion to Suppress all evidence obtained incident to the detention, arrest, and search of the Defendant on April 2, 2004. Having considered the evidence presented at an *ore tenus* hearing on November 3, 2004, and the written submissions of the parties, the Court denies the Motion to Suppress.

<em>Procedural History</em>

    On April 2, 2004, the Defendant was charged and later indicted for a number of bank robberies in the cities of Norfolk and Virginia Beach. Before his trials, the Defendant filed Motions to Suppress in the Virginia Beach and Norfolk Circuit Courts. The Virginia Beach Circuit Court denied the Defendant's motion following a hearing on September 7, 2004. The Norfolk Circuit Court, faced with a similar motion, conducted an *ore tenus* hearing on

November 3, 2004, and took the motion under advisement to consider the written submissions of the parties.

*Facts*

On January 14, 2004, the Wachovia Bank located at 2000 Colonial Avenue, Norfolk, Virginia, was robbed. Detective Charles P. Primeaux, a Virginia Beach Police Officer for nine years, four of which were with the Robbery Squad, was designated to investigate this incident because he was then probing similar robberies in the City of Virginia Beach.

During his initial investigation, Primeaux received an anonymous Crime Solvers' tip identifying the Defendant, Ernest Allen Martin, as a potential suspect in both the Norfolk and Virginia Beach robberies. The informant also gave a physical description of the Defendant and advised that the Defendant had recently acquired a large sum of money and purchased a new truck. With the aid of this anonymous tip, Primeaux also discovered that the Defendant resided at 156 Dupont Circle in the City of Norfolk.

Following his initial investigation, Primeaux set up surveillance outside the Defendant's residence at 156 Dupont Circle. This residence was a single-family house that had been subdivided into four apartments. The Defendant allegedly lived in Apartment G, located in the rear of the home. Primeaux kept watch at this location and often saw the Defendant entering and exiting the residence. On one occasion, he observed the Defendant leave the apartment and proceed to an ABC store located off Colley Avenue in Norfolk. Primeaux followed the Defendant into the establishment and, upon closer observation, confirmed that the person was indeed Ernest Martin.

Satisfied with the results of his surveillance, Primeaux obtained a search warrant for Apartment G. Thereafter, on April 2, 2004, Primeaux and three other robbery detectives, two from Norfolk and one from Virginia Beach, arrived at the Defendant's residence. Several marked police units accompanied the four detectives but they never entered nor approached the Defendant's apartment.[1] Once at the apartment, the detectives, who were all dressed in plain clothes, knocked on the front door. Because no one responded, the detectives began yelling into the windows. When satisfied that no one was inside the apartment, the detectives approached other residents for help in locating the Defendant.

---

[1] Primeaux testified that the Norfolk detectives had an outstanding warrant on the Defendant for Failure to Appear, and he believed that, upon their arrival at the Defendant=s residence, the Norfolk officers would arrest the Defendant.

Primeaux and the other officers first went to Apartment # 2. As they approached the apartment they saw that the front door was slightly ajar and that the second floor windows were open. Once again the officers yelled into the windows, and, when no one responded, Primeaux pulled the front door open a few more inches and yelled again up into the apartment. Even though Primeaux pulled the door slightly open, he testified that he never entered the apartment or crossed the threshold. Approximately one minute later the Defendant answered the door.

Primeaux identified himself and the other detectives to the Defendant and asked him if he was Ernest Martin. After the Defendant affirmed his identity, Primeaux asked if he could speak to him about some incidents that had recently occurred in the City of Virginia Beach. The Defendant agreed to speak to the officers and invited them into his apartment.

The officers entered the apartment and ascended the stairs to the second floor. Primeaux testified that the second floor consisted of an entryway, a kitchen to the left, two bedrooms to the right, and a long hallway that led to a living room in the back of the apartment. The three officers remained in the entryway as Primeaux followed the Defendant down the hallway. As he made his way to the living room, Primeaux noticed two jackets: a gray jacket and a dark blue pullover jacket. Both of these items matched the description of the jackets worn by the suspect during the Norfolk and Virginia Beach bank robberies.

When Primeaux entered the living room, the Defendant invited him to sit on a couch. Primeaux then began asking the Defendant questions about his health, family, criminal history, and employment status. The Defendant responded that he had not been able to work because of an illness but that he was able to support himself through his savings and by selling tools. The Defendant also stated that he was able to obtain money to purchase a new truck by selling some toolboxes.

After speaking with the Defendant about these various topics, Primeaux asked him to look at a photograph. Primeaux explained that the picture was taken from a surveillance camera at a Wachovia Bank in Virginia Beach and that he thought the individual in the picture resembled the Defendant. The Defendant agreed to examine the photograph and upon closer view stated that the individual did in fact "look a lot like me." A few moments after the Defendant made this statement, Norfolk Detective Wensel stepped inside the living room, told the Defendant that he was under arrest for an outstanding Failure to Appear warrant, and placed him in handcuffs. Before the officers escorted the Defendant out of the residence, Primeaux asked him for permission to search the apartment. Even though the Defendant consented,

Primeaux testified that he did not conduct a search because he felt uncomfortable doing so without a proper search warrant.

After his arrest, the Defendant was transported to the Norfolk Police Operations Center where Norfolk detectives advised him of his *Miranda* rights. Primeaux arrived at the POC separately and, upon his arrival, had another conversation with the Defendant. During this conversation, the Defendant asked Primeaux if he would pay his rent for him; Primeaux responded that he would. In addition, Primeaux encouraged the Defendant to be honest and told him that his "honesty and cooperation would go a long way."

Following this second conversation, Primeaux read the Defendant his *Miranda* rights once more and conducted an interview. During this interview the Defendant orally confessed to his involvement in the Virginia Beach and Norfolk bank robberies. The Defendant subsequently gave a written confession to Norfolk robbery detectives concerning the bank robbery in Norfolk.

*Analysis*

I. *Was the Defendant in custody during his initial conversation with Detective Primeaux?*

If the police take a suspect into custody and then ask him questions without informing him of his *Miranda* rights, his responses cannot be introduced into evidence to establish his guilt. *Berkemer v. McCarty*, 468 U.S. 420, 429, 104 S. Ct. 3138, 3144 (1984). However, "police officers are not required to administer *Miranda* warnings to everyone whom they question, and *Miranda* warnings are not required when the interviewee's freedom has not been so restricted as to render him or her in custody." *Harris v. Commonwealth*, 27 Va. App. 534, 564, 500 S.E.2d 257, 261-62 (1998) (citation omitted). In the case at bar, the Defendant argues that his initial conversation with Primeaux constituted a custodial interrogation. Because he was not given *Miranda* warnings before that interrogation, he asserts that any statements made must be excluded at trial.

A defendant must be informed of his constitutional rights before custodial interrogation begins. *Lanier v. Commonwealth*, 10 Va. App. 541, 554, 394 S.E.2d 495, 503 (1990). Whether a suspect is "in custody" under *Miranda* is determined by the circumstances of each case, and the ultimate inquiry is whether a reasonable person in the suspect's position would have understood that his freedom of movement was curtailed to a degree associated

with formal arrest. *Wass v. Commonwealth*, 5 Va. App. 27, 32, 359 S.E.2d 836, 839 (1987). This determination depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529 (1994).

Among the circumstances to be considered when determining whether a suspect is in "custody" include: "(1) the manner in which the individual is summoned by the police, (2) the familiarity or neutrality of the surroundings, (3) the number of officers present, (4) the degree of physical restraint, (5) the duration and character of the interrogation, and (6) the extent to which the officer's beliefs concerning the potential culpability of the individual being questioned were manifested to the individual." *Harris*, 27 Va. App. at 565, 500 S.E.2d at 262. No single circumstance is dispositive of the determination. *Wass*, 5 Va. App. at 33, 359 S.E.2d at 839.

The Court finds that a reasonable person in the Defendant's position would not have believed that his freedom of movement had been curtailed to the degree associated with a formal arrest. Several facts support this conclusion: (1) the Defendant invited Primeaux and the three other detectives into his apartment; (2) before the officers entered, Primeaux announced the purpose of his visit; (3) the conversation took place in the Defendant's own home; (4) there was only one officer present during the conversation and the exchange was brief; (5) most of the conversation was related to identification and the purpose of the questioning was investigative and not accusatory; (6) the officers never told the Defendant that they were executing a search warrant or that the Defendant was being arrested for an alleged bank robbery; (7) the Defendant was not restrained, handcuffed, or searched; (8) the officers were dressed in plain clothes, (9) no officer ever drew a weapon nor threatened the Defendant in any way; and (10) the Defendant was at no time told by the officers that he could not leave.

Detective Primeaux's subjective view that the Defendant was a prime suspect in the Norfolk and Virginia Beach robberies did not transform the conversation into a custodial interrogation. Under *Kauffmann v. Commonwealth*, 8 Va. App. 400, 382 S.E.2d 279 (1989), *Miranda* warnings are not required merely because the investigation has centered on the person being questioned. *Id.* at 404-05, 382 S.E.2d at 281. In addition, the fact that Primeaux told the Defendant that he believed that the person in the photograph looked like him is not dispositive on the issue of custody. This statement was ambiguous and "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police

decide to make an arrest." *Stansbury*, 511 U.S. at 324-35, 114 S. Ct. at 1530 (citation omitted). "The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case." *Id.*

Relying on the decision in *Wass v. Commonwealth*, 5 Va. App. 27, 359 S.E.2d 836 (1987), the Defendant argues that he was in custody for *Miranda* purposes during his initial conversation with Primeaux. The Court disagrees. In *Wass*, approximately sixteen armed police officers arrived at the defendant's house via two dump trucks and a helicopter. The officers secured the house, with several officers surrounding it, disclosed to the defendant that the purpose of their visit was to execute a search warrant and threatened to kill the defendant's dog if he did not control it. In light of these circumstances, the Virginia Court of Appeals concluded that the number of officers, the manner of their arrival and method of securing the house, and the threat to kill the dog combined to resemble a military operation and was so overwhelming that no reasonable person would have felt free to resist any demand made on him. *Id.* at 34, 359 S.E.2d at 840.

The facts in *Wass* differ remarkably from those in the case at bar. Here, the Defendant spoke to one detective, in his own living room; a familiar and neutral place. The encounter consisted of a calm discussion, with no show of force or any physical restraint. Thus, the encounter was consensual, not custodial, and *Miranda* warnings were not required. *Wass* simply is not controlling under the facts of this case.

## II. *Was the Defendant's interview at the Police Operations Center proper?*

The Defendant next seeks to suppress the statement he gave to Detective Primeaux at the Norfolk Police Operations Center. The Defendant concedes that he was read and waived his *Miranda* rights prior to making that statement, but argues that the waiver was tainted by his previous unwarned statements. In support of his position, the Defendant relies on the United States Supreme Court's recent holding in *Missouri v. Seibert*, 124 S. Ct. 2601, 159 L. Ed. 2d. 643 (2004). This reliance is misplaced.

In *Seibert*, the Supreme Court upheld the suppression of a confession resulting from a manipulative interrogation technique punctuated by a *Miranda* warning. Under this strategy the police would: (1) intentionally interrogate a suspect without providing *Miranda* warnings; (2) obtain a tainted confession; (3) read the suspect her rights and obtain a waiver; then (4) promptly resume questioning with the expectation of obtaining a duplicate, untainted confession. The Supreme Court held that, in cases involving such

"coordinated and continuing interrogation," the insertion of *Miranda* warnings into the middle was not effective to allow the defendant to make a free and rational choice about speaking during the second part of the interrogation. *Id.* at 2611-13, 159 L. Ed. 2d 656-58.

The Defendant argues today that his statement given to Detective Primeaux at the Police Operations Center must be suppressed under *Seibert* because it was made during a continuing interrogation. However, an examination of the evidence reveals nothing to suggest that the police tactics in this case even approached the type of conduct condemned in *Seibert*. In the case at bar, the Defendant consented to the initial interview with Detective Primeaux at his home. During this interview Primeaux acquired identifying information from the Defendant, and at no time during this conversation did the Defendant confess to any crime. Only after the Defendant was taken to the Norfolk Police Operations Center and was read his *Miranda* warnings twice did he confess to committing several robberies in Norfolk and Virginia Beach. From these facts, it is evident that Detective Primeaux did not deliberately delay giving the *Miranda* warnings until after the Defendant confessed. Therefore, the Court finds the Defendant's argument based on *Seibert* without merit.

### III. *Was the Defendant's confession induced by illegal promises?*

The Defendant's final argument attacks the voluntariness of his statements asserting that they were induced by a promise for a reduced sentence.It is true, as the Defendant contends, that a "confession is inadmissible where it [is] induced by the hope of the gain of some advantage or to avoid some evil in reference to the proceeding against the declarant." *Jackson v. Commonwealth*, 116 Va. 1015, 1020, 81 S.E. 192, 194 (1914). However, if a statement is the product of an essentially free and unconstrained choice by its maker, it will be deemed voluntary. *Colorado v Connelly*, 479 U.S. 157, 107 S. Ct. 515 (1986).

The burden is upon the Commonwealth to prove, by the greater weight of the evidence, that the Defendant's statement was voluntary. *Rodgers v. Commonwealth*, 227 Va. 605, 608, 318 S.E.2d 298, 300 (1984). When determining whether a statement is voluntary, a court must decide, in light of the totality of the circumstances, whether the statement is the product of an essentially free and unconstrained choice by its maker, or whether the maker's will had been overborne and his capacity for self-determination critically impaired. *Id.* at 609, 38 S.E.2d at 300. In the present case, the Defendant, after having being read his *Miranda* warnings twice, was interrogated by Detective

Primeaux. During this interrogation Primeaux asked the Defendant to be honest and told him that his "honesty and cooperation would go along way." In addition, Primeaux also told the Defendant that he would disclose to the Commonwealth's Attorney whether he had been cooperative and honest.

Despite the Defendant's contention, Primeaux's statements cannot be interpreted as a promise that the Defendant would not be charged or that he would receive a reduced sentence in exchange for his confession. Further, Primeaux testified that the Defendant never gave any indication that he expected such treatment. The Detective merely encouraged the Defendant to be truthful. This falls far short of a confession induced by the hope of gaining some advantage. Therefore, the Court concludes, in light of the totality of the circumstances, that the Defendant's confession to Primeaux was voluntary. The Defendant's Motion to Suppress is denied.