482

# CIRCUIT COURT OF THE CITY OF MARTINSVILLE

Commonwealth of Virginia

v.

Moses Keith Hughes

Case Nos. CR05-544, CR05-555

Commonwealth of Virginia

v.

Michelle Dawn Gorig

Case No. CR05-553

February 6, 2006

BY JUDGE G. CARTER GREER

The defendants have filed motions to suppress, which the court heard jointly on January 31, 2006. At the conclusion of the hearing, the court took both motions under advisement in order to permit the parties to submit additional authorities. Having considered the evidence and the arguments of counsel, the court grants the motions to suppress.

On June 1, 2005, at approximately 9:20 in the evening, a "swat team" composed of seventeen officers of the Martinsville Police Department executed a search warrant at a house located at 103 Stephen Street in the city. While some of the officers formed a secure perimeter around the residence, other officers, carrying a breaching tool and a ballistic shield, entered the house. Two other officers carrying machine guns followed. Numerous other officers also entered the house with their handguns drawn. There was a police dog stationed outside the house.

Defendant Hughes was entering the house, when the police arrived. Defendant Gorig and another person were sitting on the front porch. Upon arrival, Lt. Thomas, who was in charge of the operation, identified himself to Hughes and told him that he (Thomas) wanted to ask Hughes some questions. Lt. Thomas showed Hughes the search warrant, which specifically named Hughes as a person to be searched. Lt. Thomas then told Hughes to lie on the floor, at which point Lt. Thomas placed handcuffs on Hughes and searched him. Other officers handcuffed Gorig and kept her outside.

Hughes lay in this position for forty minutes, while officers "swept" and searched each room. At 10:00, Lt. Thomas removed the cuffs from Hughes and took him to the living room, where Hughes sat down on a sofa. Gorig, who was still in handcuffs, remained outside. The search was still going on at this time, and most of the officers were in other parts of the house. There was another officer standing at the front door, but neither that officer nor Lt. Thomas displayed a weapon.

Lt. Thomas told Hughes that he was not under arrest, and that he was free to leave. Hughes, who was scared and nervous, signed a statement to that effect. Lt. Thomas then proceeded to ask a series of questions. At one point in the interrogation Hughes had to ask for a glass of water, since he was not permitted to go to other rooms in the house, including the kitchen. Later in the interrogation, Hughes asked and received permission to go outside to the porch. Lt. Thomas interrogated Hughes for one hour, during which time Gorig remained in cuffs. After questioning Hughes, Lt. Thomas brought Gorig inside and removed her cuffs; however, Gorig invoked her privilege against self-incrimination under the Fifth Amendment and refused to make a statement.

At no time did Lt. Thomas read to Hughes the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), which mandates that the police inform a defendant of the right to remain silent and the right to counsel immediately prior to a custodial interrogation. In *Miranda*, the Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. In *Stansbury v. California*, 511 U.S. 318 (1994), the Supreme Court further explained that "[i]n determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest'." *Id.* (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). *See Novak v. Commonwealth*, 20 Va. App. 373 (1995); *Aldridge v. Commonwealth*, 44 Va.

App. 618 (2004). Whether a suspect is in "custody" is an objective test, so "the only relevant inquiry is how a person in the suspect's situation would have understood his circumstances." *Dixon v. Commonwealth*, 270 Va. 34, 40 (2005).

Based on the evidence in this case, the court can draw no conclusion but that a reasonable person in the position of the defendants would not have felt free to leave. The facts of the case are remarkably similar to the facts of *Wass v. Commonwealth*, 5 Va. App. 27 (1987), in which the police, who were executing a search warrant, "seized control of Wass's private residence and secured the premises in a manner suggestive of a military maneuver." *Id.* at 34. The Court of Appeals stated further that "a reasonable man confronted with this display of manpower at his house, even though earlier told he was not under arrest and was free to leave, could only conclude that he was in fact not free to leave and was expected to cooperate." *Id.* This court cannot distinguish *Wass* and grants the motions to suppress.